Jeffery A. RUSSELL,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–277A37.

Court of Appeals of Indiana,
Third District.

Oct. 11, 1979.

Rehearing Denied Nov. 1, 1979.

Harold W. Myers and Thomas L. Ryan, Fort Wayne, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Judge.

Defendant-appellant Jeffery A. Russell appeals from a judgment entered by Steuben Circuit Court upon a jury verdict of guilty of the offense of illegal possession of marijuana of an aggregate weight of more than 30 grams.[1]

The jury verdict read, in part:

"We, the Jury, find the defendant, Jeffery A. Russell, guilty of possession of a controlled substance as charged in the Information, and that he be imprisoned in the State Prison for a determinate period of two (2) years . . ."

The trial court initially sentenced the defendant as follows:

"IT IS NOW ORDERED AND ADJUDGED by the Court that the defendant, Jeffery A. Russell, having been adjudged guilty of a crime of Possession of a Controlled Substance as charged by the information subject to suspended execution of sentence hereafter set forth, that he is and is hereby committed to the Custody of the Department of Correction for classification and confinement for a period of two years. . . . The Court finds that by reason of the character of defendant and the facts and circumstances surrounding the commission of the crime, the interests of society does not demand or require that the defendant shall suffer the full penalty imposed by law.

"IT IS THEREFORE ORDERED that the execution of the sentence of imprisonment be suspended during defendant's good behaviour and so long as he complies with all terms and conditions except for a period of six months during which period the defendant shall be imprisoned

at the Indiana State Farm. The conditions of probation are . . ."

The defendant filed a motion to correct errors, alleging various errors at trial and in sentencing. The State also filed a motion to correct errors, alleging errors in sentencing. The State contended, *inter alia*, that the trial court had no authority to suspend a part of a sentence but was constrained by statute to suspend all or none. The State requested correction of the sentence accordingly.

The court denied the defendant's motion to correct errors, granted the State's motion, and modified its earlier judgment as follows:

"Hearing held on State's Motion to Correct Errors and/or Sentence. Motion granted and that portion of the sentencing judgment entered on August 16, 1976, which suspends part of the two year sentence and the probation provisions are now vacated. The defendant is therefore committed to the custody of the Department of Correction for two years less three days good time credit."

Defendant then filed a supplemental motion to correct errors based on this modification of the court's earlier judgment.

In his appeal, Russell raises seven issues for review:

(1) whether the trial court erred in sustaining the State's motion to correct errors and in modifying its initial judgment;

(2) whether the trial court erred in sentencing him under the penalty provisions effective when the offense occurred rather than the amended penalty provisions effective when he was tried and sentenced;

(3) whether the trial court erred in overruling his motion to suppress and in admitting into evidence marijuana seized pursuant to a search warrant;

---

1. IC 1971, 35–24.1–4–1 *et seq.* (1974 Burns Supp.). This chapter was repealed by Acts 1975, P.L. 338, § 4 and replaced by IC 1971, 35–24.1–4.1–1 *et seq.* (Burns Code Ed.) which was in turn repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For current law, see IC 1971, 35–48–4–1 *et seq.* (Burns 1979 Repl.).

(4) whether the trial court erred in admitting State's Exhibits Nos. 1, 2 and 3;

(5) whether the trial court erred in giving court's Final Instruction No. 7;

(6) whether the trial court erred in giving Final Instructions Nos. 8 and 9 and in overruling his motion for judgment on the evidence at the close of the State's case; and

(7) whether the evidence was sufficient to support the verdict.

The conviction is affirmed and the cause remanded with instructions to reinstate the original sentence as to the term of imprisonment.

### Issue I

Whether the trial court erred in granting the State's motion to correct errors and modifying the sentence.

Defendant initially argues that the State was not authorized under IC 1971, 35–1–47–2 (Burns 1979 Repl.)[2] and IC 1971, 35–1–43–2 (Burns Code Ed.)[3] to file its motion to correct errors because these statutes confine appeals by the State in criminal causes to reserved questions of law upon an acquittal. Defendant here was convicted and he characterizes the issue raised by the State's motion as a question of fact, whether the trial court abused its discretion in its initial sentencing decision. This argument fails for two reasons.

▪ First, the State's motion to correct errors alleged, not that the trial court abused its discretion, but that it had no discretion in sentencing under the applicable statutes, clearly a question of law.

Second, while it is true that the State can appeal reserved questions of law under IC 1971, 35–1–47–2 only upon a defendant's acquittal, *State v. Eakins* (1976), Ind.App., 348 N.E.2d 681, the State in this case did not appeal nor attempt to appeal the judgment. A motion to correct errors is merely a condition to appeal under Ind. Rules of Procedure, Trial Rule 59(G).

▪ The proper procedure to be followed by the State in challenging the alleged error in sentencing the defendant in the case at bar would have been to seek a writ of mandate. *See: State v. Palmer* (1979), Ind., 386 N.E.2d 946; *State ex rel. Palmer et al. v. Circuit Court etc.* (1963), 244 Ind. 297, 192 N.E.2d 625; *Ware v. State* (1963), 243 Ind. 639, 189 N.E.2d 704; *but see: State v. Kuczynski* (1977), Ind.App., 367 N.E.2d 8. A precondition to the application for a writ is a written motion brought to the attention of the trial court. Ind. Rules of Procedure for Original Actions, Rule (B)(1).

The trial court in the case at bar denominated the State's motion a "motion to cor-

**2.** IC 1971, 35–1–47–2. "Appeal by state. Appeals to the Supreme Court may be taken by the state in the following cases:

First. From a judgment for the defendant, on quashing or setting aside an indictment or information, or sustaining a plea in abatement.

Second. From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.

Third. From a judgment of the court arresting judgment.

Fourth. Upon a question reserved by the state."

Under the provisions of Ind. Rules of Procedure, Appellate Rule 4, appeals are also taken to the Court of Appeals as in the case at bar.

**3.** IC 1971, 35–1–43–2. "Appeal by state—Exceptions—Reserved questions—Bills of exceptions—"The prosecuting attorney may except to any decision of the court during the prosecution of any cause, and reserve the point of law for the decision of the Supreme Court. The bill of exceptions must state clearly so much of the record and proceedings as may be necessary for a fair statement of the question reserved. In case of the acquittal of the defendant, the prosecuting attorney may take the reserved case to the Supreme Court upon an appeal at any time within one year [90 days]. The Supreme Court is not authorized to reverse the judgment upon such appeal, but only to pronounce an opinion upon the correctness of the decision of the trial court. The opinion of the Supreme Court shall be binding upon the inferior courts and shall be a uniform rule of decision therein. When the decision of the trial court is decided to be erroneous, the appellee must pay the costs of the appeal."

This statute was repealed effective October 1, 1977, by Acts 1977, P.L. 26, § 25.

rect errors and/or sentence", treated it as a motion under Rule (B)(1), and properly addressed it on the merits.

■ Defendant next contends the trial court did have the discretion to suspend part of his sentence and that the trial court abused its discretion in modifying the original sentence.

Under IC 1971, 35–24.1–4–1(c) (1974 Burns Supp.), the penalty for illegal possession of more than 30 grams of marijuana is a determinate prison term of not less than two nor more than ten years. The penalty is one that may be suspended. IC 1971, 35–7–1–1 (Burns Code Ed.).[4]

■ The State first argues that the trial court and the defendant are bound by the jury verdict which assessed a two-year term of imprisonment. The ultimate sentence received by a defendant, however, rests with the court and not with the jury in trials by jury. *Grzesiowski v. State* (1976), Ind.App., 343 N.E.2d 305.

The State's second contention, that IC 1971, 35–7–1–1 does not allow suspension of part of a sentence, was raised in *State v. Kuczynski, supra,* a case in which the defendant was convicted of second-degree burglary and sentenced to two to five years, with all but one year suspended. The Court found the trial court's action to be within its authority, saying, at 367 N.E.2d 9–10:

"The State's second issue questions the trial court's authority to suspend only a portion of the sentence for the reason that the then existing statute relating to

suspended sentences, IC 1971, 35–7–1–1 (Burns Code Ed.), did not expressly allow such a procedure. The State, citing *State ex rel. Gash v. Morgan County Superior Court* (1972), 258 Ind. 485, 283 N.E.2d 349, argues that the suspension of sentences and the revocation thereof is strictly governed by statute.

"In defining the parameters of judicial authority in sentencing, we observe that there is no serious objection to the proposition that, under the facts of this case, the trial judge could have properly suspended all or none of the sentence pursuant to IC 1971, 35–7–1–1 (Burns Code Ed.). *See: Grzesiowski v. State* (1976), Ind.App., 343 N.E.2d 305.

"Furthermore, the then existing IC 1971, 35–7–2–1 (Burns Code Ed.) permits the trial court to impose conditions on probation 'as it may deem best'. Given the general rules stated in *Ewing v. State* (1974), Ind.App., 310 N.E.2d 571, that probation, if granted, should serve the best interests of society and the individual and that a trial judge has '. . . broad power to impose conditions designed to serve the accused and the community . . .', we cannot condemn the trial court's action in this case.

"If the requirement that Kuczynski serve a year in prison is viewed as a condition of probation, any error that may exist is minimized, especially when one considers that no error would have existed if all or none of the sentence was served."

4. IC 1971, 35–7–1–1. "Power to suspend sentence and place defendants on probation—Probation clerk.—The several circuit and criminal courts and the city and municipal courts in the cities of the first and second class of this state, shall have power, in any case where any person shall have been convicted of a felony or misdemeanor, or shall have entered his plea of guilty to a charge of a felony or misdemeanor, upon the entry of judgment of conviction of such person, to suspend such sentence and parole such person, by an order of such court, duly entered of record as a part of the judgment of the court in such case, except the crimes of murder, arson, first degree burglary, rape, treason, kidnapping, and a second conviction for robbery, whenever such court, in the exercise of its judgment and discretion, shall find and determine that such person has committed the offense for which he or she has been convicted under such circumstances as that, in the judgment of such court, such person should not suffer the penalty imposed by the law for such offense if he or she shall thereafter behave well, or whenever such court shall find and determine that by reason of the character of such person, or the facts and circumstances of such case, the interest of society does not demand or require that such person shall suffer the penalty imposed by law if he or she shall thereafter behave well. . . ."

This statute has been extensively modified by amendment. For current status see Burns 1979 Repl.

■ Under *Grzesiowski* and *Kuczynski,* the trial court, in its discretion, may, after considering the presentence report, suspend any sentence or penalty or part thereof fixed by a jury, or place the defendant on probation.

Following the filing of a presentence report, the trial court in the case at bar conducted a sentencing hearing and observed for the record:

"I have decided, Mr. Russell, that you should be imprisoned for a period of six months. Therefore, the formal entry will be that you will be sentenced to two years. The court will suspend all except six months. The six months will be served at the Indiana State Farm. I do not want you to be at other institutions and that's the reason I am not going toward shock probation, which would be a two year with probation after six months."

Whereupon, the court entered its original sentence, basing its decision upon "the character of defendant and the facts and circumstances surrounding the commission of the crime", and "the interests of society."

After hearing argument on the State's motion to correct errors and prior to modifying the sentence, the court observed:

"As to the State's motion I don't really know how to solve the dilemma. I've tried to research the question. The new criminal code specifically provides for suspending all or part. The present code doesn't use language like that. Then I think the question is—does the court nevertheless have inherent power to suspend part rather than all of it? I believe the state of the law is that the statute on granting suspension and probation has been strictly construed and I believe has not given the court authority to suspend part. Certainly the question will be presented to the Court of Appeals. Jeffery is presently on bail so my decision will not put him in jail pending the appeal. I certainly would not want to hurt Jeffery because you know my view is I thought six months was a proper solution, but I feel that the state of the law is that

I am bound to correct my previous sentence and expunge that part and vacate that part which suspended a part of it and that the entry should be two years determinate. So the motion of the State of Indiana is granted and the sentence will be committed to the custody of the Department of Corrections for two years less three days credit."

■ Clearly, the trial court felt that the original sentence was the correct one and the proper use of sentencing discretion under the particular facts and circumstances of the case, if such discretion in fact existed under the applicable statutes. Just as clearly, it modified that original sentence against its better judgment only because it erroneously interpreted the law to deny it any discretion and to require such a modification. Consequently, this Court remands the case to the trial court with instructions to vacate those provisions of the modified sentence which set out the defendant's term of imprisonment and to reinstate the provisions of the original sentence.

This action is not taken because this Court reviewed the facts and circumstances of the case and found the original sentence to be the proper one and the latter sentence to be an abuse of discretion. This action is taken only because the trial court itself saw its modification as an abuse of sentencing discretion, if in fact such discretion existed under the law. This Court is not maintaining that it can review a judgment and find the 1976 imposition of a sentence authorized by statute to be an abuse of discretion, *see: Gray v. State* (1974), 159 Ind.App. 200, 305 N.E.2d 886; Rules for the Appellate Review of Sentences, Rule 2, but merely that it may vacate a sentence which the trial court itself sees as an abuse of its discretion under the facts and circumstances of the case and one whose only basis is an erroneous interpretation of the law.

### Issue II

Whether the trial court erred in sentencing the defendant under the penalty provisions of the statute effective when the offense occurred rather than the amended penalty provisions effective when he was tried and sentenced.

■ Defendant argues that when punishment is lessened by statutory authority after the commission of a crime and before trial or sentencing, the ameliorative effect of the amendment should benefit the defendant.

This contention need not be addressed on its merits, however, because the amendment of the punishment provisions in the statutes applicable to the case at bar is not truly ameliorative under *State v. Turner* (1978), Ind.App., 383 N.E.2d 428, which held that where the maximum duration of imprisonment for the offense was the same under the statute in effect when the offense was committed and under the statute in effect when the defendant was sentenced, the latter statute was not "amelioratory" and, therefore, the defendant should be sentenced according to the general rule that the statute in effect when the crime is committed is applicable in sentencing a defendant. The fact that the amendment occurred prior to trial as well as prior to sentencing is of no import.

In the case at bar, the penalty under IC 1971, 35–24.1–4–1, effective when the offense occurred, is a determinate term of imprisonment of not less than two nor more than ten years. Under IC 1971, 35–24.1–4.-1–11, effective when Russell was tried and sentenced, the penalty is a determinate term of imprisonment of not less than one nor more than ten years. Thus, the maximum duration of punishment for the offense remained ten years and the amendment was not "amelioratory."

## Issue III

Whether the trial court erred in overruling defendant's motion to suppress and in admitting into evidence marijuana seized pursuant to a search warrant.

■ Defendant argues that the affidavit upon which the warrant issued for the search of his residence did not show facts and circumstances then in existence, but rather indicated on its face facts and circumstances "in futuro." He contends that because the contraband was not concealed on the premises nor was it in his possession at the time the warrant was issued, the warrant was issued in violation of the provisions of IC 1971, 35–1–6–2 (Burns Code Ed.) in force when the warrant was issued.[5]

The circumstances leading up to the application for the search warrant are as follows: A customs inspector in Los Angeles, California, with the aid of a dog trained to detect narcotics, determined that a certain package contained marijuana. This information was relayed to a Fort Wayne postal inspector who was advised that the package

---

5. IC 1971, 35–1–6–2. "Affidavit—Contents and form—Evidence of probable cause.—No warrant for search or arrest shall be issued until there is filed with the justice of the peace, judge of any city court or magistrate's court or the judge of any court of record, an affidavit, particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on credible hearsay, the affidavit shall contain reliable information supplied to the affiant by a credible person, named or unnamed, and it shall contain the following:

(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.

(b) The facts within the personal knowledge of the credible person.

(c) The facts within the affiant's knowledge as to the credibility of the credible person. "An affidavit for search substantially in the following form shall be deemed sufficient:

State of Indiana )
County of _____ ) ss:

A. B. swears (or affirms, as the case may be) that he believes and has good cause to believe (here set forth the facts and information constituting the probable cause) that (here describe the things to be searched for and the offense in relation thereto) are concealed in or about the (here describe the house or place of C. D., situated in the county of _____ in said state.

Subscribed and sworn to before me this _____ day of _____, 19____.

An affidavit upon which to base an arrest substantially in the form described in section 171 [repealed] of this act, as amended, shall be deemed sufficient." For current status, see Burns 1979 Repl.

was being sent to him by certified mail. On July 15, 1975, a search warrant to seize the package upon its arrival in Fort Wayne was issued with authority to search its contents. Pursuant to this warrant, the package was seized, opened and found to contain marijuana. Application was made for another warrant to search particularly described premises. This affidavit stated:

"Dennis M. Hoolihan, a Deputy Sheriff with the Steuben County Sheriff's Dept., Steuben County, Indiana, swears that he believes and has good cause to believe that the following particularly described items: A certain cylindrical package 6½ inches in length and 3⅜ inches in diameter bearing Customs Declaration of 'TEA' and being mailed from Thailand with a return address of Mayasia Hotel, Room # 350, Thailand, and *addressed to Bill White, R.R. # 5, Box 925,* Angola, Indiana, 46703. *will be concealed in or about the following premises* : A white, two-story farm house located on the Southeast side of Jimmerson Lake, Pleasant Township. *The mailing address in front of said residence is Box 925.* Two photographs of said residence and a map showing the location of said residence are attached hereto, situated in the County of Steuben, in the State of Indiana, *said premises is occupied by one Jeff Russell and another person unknown to affiant,* and that the aforesaid items is related to the following offense:
*Possession of a controlled substance.* Your affiant believes that the following facts constitute probable cause for a search and seizure. Pursuant to search warrant issued by Judge John R. Berger, Judge, Steuben Circuit Court, on July 15, 1975, at 10:10 a. m., I examined the contents of the above described package. I found a green grassy substance in a metal container in said cylindrical package which appeared to be marijuana. At 10:30 a. m. I conducted Duquenois test on said green grassy substance and got a positive reaction for marijuana. I then repackaged said substance. *The metal can,* of which a photograph is attached, *will be delivered* in the cylindrical package *to the above described residence which is the mailing address on said package at approximately 1:00 p. m. this date* [July 15, 1975]."
(Emphasis is the appellant's.)

The search warrant for the residence was issued at 11:20 A.M., July 15, over an hour and a half before the planned delivery of the package to the residence. Defendant argues that since the marijuana had not been delivered to the address by 11:20 A.M. and was not in the defendant's possession at that time, probable cause did not exist when the warrant was issued.

Defendant relies on language from *Ashley & Taylor v. State* (1968), 251 Ind. 359, at 368, 241 N.E.2d 264, at 269, that " '[t]he right to issue a search warrant rests upon facts existing at the time the showing is made for a warrant.' " *Ashley,* however, deals with the problem of how much time may intervene between the obtaining of the facts and the issuance of the warrant and concludes that in dealing with a substance like marijuana, probable cause to believe that marijuana was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later. In *Ashley,* the issue was staleness; here, the issue is prematurity.

The precise issue of whether a search warrant may be validly issued prior to the actual arrival of the matter to be seized at the premises to which the warrant is directed appears to be one of first impression in Indiana, but has been addressed by courts in other jurisdictions. *People v. Glen* (1972 N.Y.Ct.App.), 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614; *People v. Sanchez* (1972 Cal.Ct.App.), 24 Cal.App.3d 664, 101 Cal.Rptr. 193; *Alvidres v. Superior Ct., Co. of Ventura* (1970 Cal.Ct.App.), 12 Cal. App.3d 575, 90 Cal.Rptr. 682.

The *Alvidres* court explained, at 685: "The exclusionary evidence rule in California finds its roots in the Fourth and Fourteenth Amendments of the United States Constitution and in Article I, § 19 of the Constitution of the State of Cali-

fornia. Each guarantees protection against 'unreasonable' searches and seizures. This key word 'unreasonable' sets the tone for any analysis of the application of these constitutional provisions to police action in a given case. Both the United States and California Constitutions provide ' * * * no warrant shall issue, but on probable cause, supported by oath or affirmation particularly describing the place to be searched and the persons and things to be seized.' [Art. 1, § 11 of the Indiana Constitution contains identical language.]

\* \* \* \* \* \*

"The entire thrust of the exclusionary rule and the cases which have applied it is to encourage the use of search warrants by law enforcement officials.

"One of the major difficulties which confronts law enforcement in the attempt to comply with court enunciated requirements for a 'reasonable' search and seizure is the time that is consumed in obtaining search warrants.

"The speed with which law enforcement is often required to act, especially when dealing with the furtive and transitory activities of persons who traffic in narcotics, demands that the courts make every effort to assist law enforcement in complying with the edicts that the courts themselves have issued.

"We must ask ourselves whether the objective of the rule is better served by permitting officers under circumstances similar to the case at bar to obtain a warrant in advance of the delivery of the narcotic or by forcing them to go to the scene without a warrant and there make a decision at the risk of being second-guessed by the judiciary if they are suc-

cessful in recovering evidence or contraband. We believe that achievement of the goals which our high court had in mind in adopting the exclusionary evidence rule is best attained by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future. Nowhere in either the federal or state constitutions, nor in the Statutes of California, is there any language which would appear to prohibit the issuance of a warrant to search at a future time.

\* \* \* \* \* \*

"*United States ex rel. Beal v. Skaff,* 7 Cir., 418 F.2d 430 is squarely in point. "In that case a mail delivery of marijuana was to be made at about 12:34 p. m. A search warrant was issued at 12:15 p. m. The court where the warrant was issued was about 16 miles from the premises to be searched.

"The court in upholding the warrant there said that the critical consideration in evaluating the validity of the warrant is a belief on the part of the magistrate that the warrant will not be *executed* prior to the commission of the crime or possession of the goods to be seized. [Original emphasis.]

"It is logical to assume that when officers obtain a warrant to search for and seize particular property which they have probable cause to believe will be on the premises at a specified future time, they would not be disposed to undermine the success of their efforts by premature execution of the warrant."

Neither IC 1971, 35–1–6–2, *supra,* nor IC 1971, 35–1–6–3 (Burns 1979 Repl.) [6] has lan-

6. IC 1971, 35–1–6–3. "Form of search warrant.—Warrant for search substantially in the following form, shall be deemed sufficient:

State of Indiana        )
County of _____   ) ss:

To any constable, police officer, sheriff or conservator of the peace, greeting: Whereas, there has been filed with me an affidavit of which the following is a copy: (Here copy the affidavit.) You are, therefore, command-

ed, in the name of the State of Indiana, with the necessary and proper assistance, in the daytime or in the nighttime to enter into or upon the premises described in said affidavit and there diligently search for said goods and chattels, to wit: in said affidavit described and that you bring the same, or any part thereof found on such search, forthwith before me at my office, to be disposed of according to law.

guage which would appear to prohibit the issuance of a warrant to search at a future time, and the actual warrant here involved directed only that the police enter and search for the marijuana "in the daytime or in the nighttime" and that any seized property be brought before the issuing judge "forthwith" after the search. As stated in *Alvidres, supra,* it is logical to assume Hoolihan and his fellow officers would not undermine the success of their efforts by execution of the warrant before the package was delivered.

The affidavit was sufficient under the statutes and the warrant was validly issued.

### Issue IV

Whether the trial court erred in admitting State's Exhibits Nos. 1, 2 and 3.

█ The trial court admitted into evidence, over defendant's objections, a mail wrapper, cannister, and plastic bag containing 203 grams of marijuana. Defendant's contention that this was error because "an improper foundation has been laid . . . due to the fact that the proper foundation is not laid by the chemical witness" is waived by his failure to support his position with cogent argument and citation to authorities as required by Ind. Rules of Procedure, AR. 8.3(A)(7). *Williams v. State* (1973), 260 Ind. 543, 297 N.E.2d 805.

### Issue V

Whether the trial court erred in giving Final Instruction No. 7.

█ Defendant's objection at trial to Final Instruction No. 7 was as follows:

"Defendant contends in fact this is not the law and that the instruction is [sic] given as read is inflamatory [sic] to the conscience of the jury and allows it to make a finding of guilty based upon certain instructions which are not in fact the law of the State of Indiana."

Objections which are so general as to not specifically point out the defects in the instruction present no question on appeal.

Given under my hand this ——— day of ——— 19 ——.

*Gilson v. City of Anderson, etc.* (1967), 141 Ind.App. 180, 226 N.E.2d 921; *Lutz v. Goldblatt Brothers, Inc., etc.* (1967), 140 Ind. App. 678, 225 N.E.2d 843; *McCoy et al. v. State* (1958), 237 Ind. 654, 148 N.E.2d 190. Defendant's objection at trial suffered from this fatal defect; thus, any allegation of error in the giving of the instruction is waived.

### Issue VI

Whether the trial court erred in giving Final Instructions Nos. 8 and 9, and in overruling defendant's motion for judgment on the evidence.

█ Defendant alleges the trial court erred by: (1) giving an instruction which included the sentence, "The Indiana Uniform Controlled Substances Act defines marijuana as a controlled substance."; (2) giving an instruction which did not list as an element of the offense which the State had to prove the fact that marijuana was a controlled substance; and (3) overruling his motion for judgment on the evidence based on his contention that the State failed to prove that marijuana was a controlled substance. All these allegations of error stem from defendant's contention that whether marijuana was a controlled substance when the offense occurred is a question of fact upon which the State must introduce evidence and persuade the jury beyond a reasonable doubt. This contention is wholly erroneous.

The State correctly responds that marijuana was a controlled substance as a matter of law at the time the offense occurred. Russell was charged under IC 1971, 35–24.-1–4–1(c) (1974 Burns Supp.) with the offense of knowingly or intentionally possessing a controlled substance, to-wit: marijuana. IC 1971, 35–24.1–2–4 (1974 Burns Supp.) lists controlled substances in Schedule I, subdivision (d)(10) expressly designating marijuana.

It is elementary that the court must take judicial notice of statutes, *State, ex rel. v. Wheeler* (1909), 172 Ind. 578, 89 N.E. 1, and

(Justice of the Peace) or (Magistrate) or (Judge of ——— Court)."

has a duty to instruct the jury as to what is the law. *Rice v. The State* (1855), 7 Ind. 332.

### Issue VII

Whether the verdict is supported by sufficient evidence on the elements of possession and mens rea.

The burden was on the State to prove beyond a reasonable doubt that Russell possessed a controlled substance knowingly or intentionally. Russell contends that since there was no evidence of actual possession, the State had to prove constructive possession of the cannister with actual knowledge of its contents.

In *Phillips v. State* (1974), 160 Ind.App. 647, at 650, 313 N.E.2d 101, at 103, this Court reviewed the relevant law as follows:

"A conviction for possession of narcotics or a dangerous drug in violation of IC 1971, 35–24–1–20(c), *supra*, may rest upon evidence showing either actual or constructive possession. *McGowan v. State* (1973), Ind.App., 296 N.E.2d 667 (transfer denied); *Corrao v. State* (1972), Ind.App., 290 N.E.2d 484. Since, in the instant case, there is no evidence that Phillips had actual physical possession of the packet of heroin which was discovered in the rear compartment of the police car, the conviction must be sustained, if at all, upon evidence demonstrating that appellant had constructive possession.

"Constructive possession may be proven by circumstantial evidence from which the care, management and control over the item in question may be inferred. *McGowan v. State, supra; Corrao v. State, supra.* See: Anno. 91 A.L.R.2d 810.

"While an accused must have actual knowledge of the presence of the item and of the item's character, this knowledge can be inferred from the fact that the item was found in a place under his dominion and control. *Thomas v. State* (1973), Ind., 291 N.E.2d 557; *Feltes et al. v. People of Colorado* (Colo.1972), 498 P.2d 1128".

It is well established that constructive possession of narcotics need not be exclusive and the items may be possessed jointly by two or more persons without showing that any one person had actual physical control. *Cooper v. State* (1976), Ind.App., 357 N.E.2d 260.

Upon review for sufficiency of the evidence, the reviewing court will consider only that evidence of probative value which is favorable to the verdict, together with all reasonable inferences to be drawn therefrom; if such evidence establishes each necessary element of the crime charged beyond reasonable doubt, the verdict will not be disturbed. *Jones v. State* (1978), Ind., 372 N.E.2d 1182.

The evidence shows that the package containing the cannister was delivered by rural carrier at approximately 1:00 P.M., July 15, to the residence rented by the defendant for the month of July 1975. Deputy Hoolihan watched the residence and the mailbox until a car with two occupants stopped at the mailbox and proceeded behind the house. Hoolihan checked the mailbox, found the package gone, and proceeded to the residence.

Within two or three minutes after the car stopped at the mailbox, another officer presented the search warrant to a Mr. Walchle who was standing in front of the bathroom door, and directed Walchle and the defendant to sit at a table just outside the bathroom door. The two indicated they had received their mail that day. Some items of mail were on the table but not the package. When first asked about the package, the two indicated a lack of knowledge of any such package. When the officer told them he knew of a package they had recently taken from their mailbox, the defendant indicated that the package was in the bathroom. Upon request, the defendant took the officer to the bathroom and pointed to the package in a waste can underneath the bathroom sink. One end of the paper wrapper had been torn open. The officers examined the cannister, found the outer lid and inner lid both in place, with the handle that had been on the inner

lid when it was inspected earlier that morning now gone. They found that the tissue paper under the inner lid and over a layer of tea was torn. They removed the tissue paper and the tea and found the marijuana.

The evidence thus shows that: (1) Russell rented the house in which the marijuana was found; (2) two persons stopped at the mailbox immediately before the marijuana was found to have been taken from the mailbox, then proceeded to the house; (3) the defendant was one of two persons in the house when the police arrived moments later; (4) the marijuana was found in the house; and (5) the defendant knew the precise location of the package in the house. This is sufficient evidence from which to infer that Russell had dominion or control over the package and thus constructive possession.

The evidence shows that: (1) the defendant initially denied knowledge of the package; (2) he knew of its precise location; and (3) the package had been opened and the inner liner broken through. This is sufficient evidence from which to infer that Russell had actual knowledge of the presence of the cannister and of the character of its contents.

The judgment of the trial court is affirmed and the cause is remanded to the trial court for modification of the sentence in keeping with this opinion.

Affirmed and remanded.

GARRARD, P. J., and STATON, J., concur.