**UNITED STATES of America, Appellee,**

v.

**Elijah WEST, Appellant.**

**No. 28455.**

United States Court of Appeals Second Circuit.

Argued Jan. 27, 1964.

Decided Feb. 20, 1964.

Michael J. Gillen, Asst. U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y. (Joseph H. Hoey, U. S. Atty. for

Eastern Dist. of New York, and Gilbert A. Bond, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Arnold J. Goldstein, Brooklyn, N. Y. (Goldstein & Goldstein, Brooklyn, N. Y., on the brief), for appellant.

Before LUMBARD, Chief Judge, and WATERMAN and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

This appeal turns on whether there was sufficient basis for the issuance of a night-time search warrant and whether the warrant was properly executed. As we find that the warrant was properly issued and enforced and there was ample proof of West's guilt on count 2, we affirm the judgment of the conviction.

Elijah West appeals from his conviction on two counts of an indictment which charged him in count 1 with unlawfully having in his possession, custody, and control a still and distilling apparatus at 169–15 120th Avenue in the Borough of Queens (26 U.S.C. § 5179(a) and § 5601(a) (1)), and in count 2 with unlawfully using and possessing a still, boiler, and other utensils for the purpose of producing distilled spirits in a dwelling house (26 U.S.C. § 5178(a) (1) and § 5601(a) (6)).[1]

On March 19, 1962 the United States Commissioner issued a warrant to search the premises at 169–15 120th Avenue, Queens, upon an affidavit made before him the same day by Investigator La-Perch of the Alcohol and Tobacco Tax Division of the United States Treasury Department. At 9 o'clock the next night, LaPerch, assisted by six other investigators, executed the warrant by entering the front door and the rear door of the one-story bungalow house. The investigators found a still set up and in operation and the defendant, West, hiding underneath the basement stairs.

The appellant argues that the search warrant was improperly issued for service at night because the affidavit on which it was based failed to state positively that the property was in the place to be searched, pointing out that Rule 41 (c) of the Rules of Criminal Procedure permits a warrant to be executed at night-time only where "the affidavits are positive that the property is on the person or in the place to be searched."

In our view LaPerch's affidavit met the requirement of positiveness. LaPerch stated that an informer had advised him prior to March 1 that West and one Jackson intended to operate a still on the premises and were using a Plymouth station wagon. LaPerch thereafter observed the men using the station wagon which contained a quantity of jugs "of the type used for illicit whiskey" and that he detected a strong odor of corn whiskey coming from the station wagon. He saw this automobile back into the premises on March 17. LaPerch further swore that on each and every day from March 13 to March 18 inclusive, he detected an odor of fermenting mash "emanating from the premises at 169–15 120th Avenue," that the basement windows were blacked out and all windows in the house were shaded and drawn, that "heavy condensation was apparent on all the windows, and the rear door was covered with a blanket," and that West was known to the affiant as a "previous and recurrent alcohol violator."

LaPerch's affidavit thus gave categorical support to his conclusion that he "had reason to believe that on the premises," which he described in detail, "there is now being concealed certain property, namely, a quantity of mash fit for distillation and an illicit distillery and other distilling apparatus, in violation of federal law." As LaPerch's affidavit was "positive" that the property was in the

---

1. West was found not guilty on counts 3 and 4 which respectively charged him with knowingly and wilfully having in his possession a quantity of distilled spirits in containers to which the necessary tax stamps had not been affixed and, unlaw- fully making and fermenting mash fit for the production of distilled spirits other than on properly bonded premises duly authorized by law in violation of 26 U.S.C. § 5205(a) (2) and § 5222(a) (1).

place to be searched, the Commissioner quite properly issued a warrant which authorized the agents to serve it and make their search "at any time in the day or night."

It is wholly immaterial that LaPerch did not use the word "positive" in his affidavit. Even had he done so, the validity of the warrant would depend on whether the facts stated in the affidavit were so definite and explicit that there could be little or no doubt that the property was on the premises. The affidavit showed that illegal distilling had been conducted on the premises on each of seven days prior to the day when La-Perch applied for the warrant. It is difficult to see how the affidavit could have been more "positive."

█ Nor is there any substance to the claim that the search warrant was improperly executed because the officers did not make known the purpose and intent of their visit prior to their forceful entry. Investigator Berman went to the front door with three other investigators. He rang the door bell, knocked on the door, and shouted "federal officers with a search warrant." There was no response although Berman could hear movement inside the premises. After waiting for about thirty seconds Berman broke one of the glass panes of the door and let himself in. Meanwhile, Investigator Bertele with two others had gone to the rear door. After making a similar announcement he also waited for about thirty seconds with no response from within, and he then gained entry by forcing the rear door. The officers were only required to wait a reasonable time after announcing their presence and their purpose. As they must have been heard by whoever was inside this small bungalow, and as it was apparent whoever was within was not going to give them entry, the warrant gave them the right to gain access as they did without further delay. Under all the circumstances, the time interval between the announcement and the breaking in was reasonable. It would have served no purpose for them to wait longer; on the other hand, any further delay might well have made the entry more dangerous for the officers of the law. That the officers were well justified in waiting no longer than half a minute seems amply confirmed by the fact that, immediately after they gained access, they found the defendant hiding under the basement stairs.

█ As West's conviction on count 2 for unlawfully using and possessing a still for the purpose of producing distilled spirits in a dwelling house was sufficiently supported by the evidence which was properly admitted, we need not consider any possible error with respect to count 1 as the court imposed similar concurrent sentences on both counts. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

█ We are aware that West's conviction on count 1 might well be questioned because the jury was permitted to consider the presumption of § 5601(b)(1) which provides that, when the defendant is found at the site of an unregistered still, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence.[2] However, an examination of the judge's charge to the jury shows that Judge Mishler gave the jury clear instructions to the effect that the presumptions of § 5601(b)(1) and (3) were to be considered only with respect to counts 1 and 4 of the indictment which were explained to them in detail. We have no reason to believe that the jury gave any weight to the presumptions with respect to counts 2 and 3. Indeed, it seems the more certain here that the jury gave separate and proper consideration to the evidence in support of each count as it acquitted West on counts 3 and 4 although it convicted him on counts 1 and 2, thus acquit-

2. In Barrett v. United States, 322 F.2d 292 (5 Cir. 1963), the Fifth Circuit recently held that this presumption and the similar presumption of § 5601(b)(2) are invalid and reversed the conviction. The Supreme Court granted certiorari 84 S.Ct. 489.

ting on count 4 where the presumptions could have been relied on for conviction, as well as convicting on count 2 where the presumptions could not have been applied. The evidence of West's guilt on count 2 was overwhelming; we affirm his conviction.