[Civ. No. 37252. Second Dist., Div. Two. Oct. 30, 1970.]

GABRIEL ALVIDRES, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

### COUNSEL

Richard E. Erwin, Public Defender, and Donald G. Griffin, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Woodruff J. Deem, District Attorney, and Thomas J. Hutchins, Deputy District Attorney, for Real Party in Interest.

## Opinion

COMPTON, J.—Petitioner Gabriel Alvidres is presently charged in a two-count information filed by the District Attorney of Ventura County with violating Health and Safety Code section 11530 (possession of marijuana) and section 11531 (importing marijuana). Trial is set for November 24, 1970.

After having unsuccessfully attempted to suppress the evidence of the marijuana, he petitioned this court for a writ of mandate pursuant to Penal Code section 1538.5, subdivision (c).

Because the issue raised by petitioner appears to be one of first impression in California we issued the alternative writ.

The question presented is whether a search warrant may be validly issued at a time prior to the actual arrival of the matter to be seized at the premises to which the warrant is directed. In other words, if the magistrate is presented with an affidavit which satisfies him that all the requisites for a valid search will ripen at a specified future time or upon the occurrence of a specified event must he wait until that time or event before authorizing the search and seizure or may he issue his warrant to be executed at the future specified time or upon the occurrence of the future event.

Petitioner does not question the sufficiency of the evidence of probable cause or other aspects of the search warrant. He argues that because the affidavit in support of the warrant on its face showed that at the time it was presented and the warrant issued, the contraband had not yet arrived at the premises, it was fatally defective.

On December 13, 1969, sometime after 9 o'clock in the morning, Officer Vernon A. Tubbs of the Santa Paula Police Department presented an affidavit and an application for a search warrant to the Honorable Philip J. West, Judge of the Ventura Municipal Court, Santa Paula Department.

In his affidavit, Officer Tubbs stated as follows:

That on December 8, 1969, he had received information from a special agent of the Federal Bureau of Customs, Los Angeles office, to the effect that a parcel addressed to Gabriel Alvidres, 515 East Main Street, Santa Paula, California, from Robert J. James, 264th Trans Co., APO San Francisco, had been opened at the Federal Bureau of Customs Mail Division located at the San Francisco International Airport. This opening had occurred on December 3, 1969. The customs agent advised that the parcel

contained an attache case which in turn contained a pillow case and pillow. Another employee of the Customs Bureau had opened the pillow case and found it to contain matter which appeared to be marijuana. The pillow and pillow case had been returned to the attache case and retained in possession of the Federal Bureau of Customs.

On December 11, Officer Tubbs spoke by telephone to one Laurence DiRicco, who identified himself as the agent of the Federal Bureau of Customs who had opened the aforementioned parcel. DiRicco substantiated the information previously imparted to Tubbs and further indicated that on December 5 he had shipped the parcel in a locked mail pouch by registered mail to a postal inspector in Los Angeles.

On December 11, 1969, Tubbs spoke with one V. C. Spanier who identified himself as a postal inspector in Los Angeles and who verified that he had received the parcel on December 8, 1969. Spanier advised that he had opened the package on December 9 and that the pillow appeared to him to contain marijuana.

Spanier further advised that he had removed a sample of the material from the pillow and placed it in a sealed envelope and then had restored the pillow and pillow case and the attache case in the original parcel and resealed it. Both the sealed parcel and the sealed envelope containing the sample were forwarded by registered mail to the assistant postmaster at Santa Paula, California.

On December 12, 1969, Officer Tubbs verified Spanier's position with the United States Post Office Department and ascertained that Spanier had substantial experience in examining marijuana.

On December 11, 1969, Officer Tubbs received the sealed envelope from the assistant postmaster and had it analyzed by a criminalist in the crime laboratory of the Ventura Sheriff's Department. The criminalist reported to Officer Tubbs that the sample was in fact marijuana.

One December 11, 1969, Officer Tubbs was advised by the assistant postmaster at Santa Paula that the original parcel would be delivered to 515 East Main Street, Santa Paula on December 13, 1969, between the hours of 9 and 10 a.m.

Officer Tubbs was informed that the delivery would be made by one Don McClure, a post office employee. On December 11, Officer Tubbs was told by Sgt. Sanders of the Santa Paula Police Department that he (Sanders) on that date had talked to Frank Alvidres at 515 East Main Street, Santa Paula, and was told by him that his son Gabriel Alvidres had returned home the day before after serving in the armed forces in Viet Nam.

On December 11, Officer Tubbs was told by a representative of the army CID in San Pedro, California, that the name Robert J. James, 264th Trans Co., APO San Francisco, was a fictitious name.

Officer Tubbs concluded his affidavit with an averment that he had personal knowledge that Alvidres resided at 515 East Main Street, Santa Paula, California.

On the basis of this affidavit Judge West issued a warrant authorizing a search of the premises consisting of two buildings and surrounding yard at 515 East Main Street, Santa Paula, and authorizing the seizure of the marijuana in question.

Officer Tubbs in a return to the search warrant indicated that he served the warrant on December 13, 1969, at the indicated address and seized one foam rubber pillow, one pillow cover and one grey Samsonite attache case and one cardboard box containing a greenish brown vegetable substance appearing to be marijuana.

Officer Tubbs testified at the hearing on the motion under section 1538.5 of the Penal Code that he believed that the warrant was actually signed by the judge at 9 a.m. and the warrant was served at approximately 9:30 a.m. The affidavit in support of the warrant reveals an entry on the last page as follows: "Subscribed and sworn to before me on this 13th day of December, 1969, at 9:30 a.m., signed by Philip J. West, Judge of the Municipal Court."

It appears that at the preliminary hearing in this matter that Officer Tubbs had testified that the warrant was served at approximately 10:30 a.m.

Petitioner contends that the affidavit clearly shows that at the time it was presented to the judge there was no basis on which the court could conclude that the contraband was at that moment presently on the premises to be searched.

In view of the fact that the affidavit alleges that the assistant post master had indicated to Officer Tubbs that the parcel would be delivered between 9 and 10 a.m. and in view of the variance in the evidence concerning the actual time of obtaining the warrant and the actual time of service, our denial of this petition could be sustained on the grounds that there was probable case to believe the contraband had arrived prior to issuance. However, the affidavit does not contain any statement to the effect that Officer Tubbs knew at the time he sought the warrant from Judge West that the delivery had actually been made.

In any event we are of the opinion that it is immaterial, for reasons

which will be set out below, whether or not the delivery of the contraband to the premises had already been made at the time the warrant was issued.

■ The exclusionary evidence rule in California finds its roots in the Fourth and Fourteenth Amendments of the United States Constitution and in article I, § 19 of the Constitution of the State of California. Each guarantees protection against "unreasonable" searches and seizures. This key word "unreasonable" sets the tone for any analysis of the application of these constitutional provisions to police action in a given case. Both the United States and California Constitutions provide ". . . no warrant shall issue, but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Section 1524 of the California Penal Code contains the statutory grounds for the issuance of search warrants in this state. That section reads in pertinent part: "A search warrant may be issued upon any of the following grounds: . . . 4. When the property or things to be seized consist of any item or constitutes any evidence which tends to show a felony has been committed, or tends to show that a particular person has committed a felony."

Section 1525 of the Penal Code provides: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched."

The cases are legion both in this state and in reported decisions from the federal courts dealing with the problem of whether a particular set of facts constituted probable cause to believe that certain seizable property was in a particularly described location.

Petitioner has cited us to a number of decisions which contain language to the effect that a search warrant should issue only upon a showing that probable cause exists to believe that an unlawful situation existed or was occurring at the time that the warrant was sought. (*Sgro* v. *United States,* 287 U.S. 206 [77 L.Ed. 260, 53 S.Ct. 138, 85 A.L.R. 108]; *People* v. *Rodriguez,* 238 Cal.App.2d 682 [48 Cal.Rptr. 117]; *People* v. *Scott,* 259 Cal. App.2d 268 [66 Cal.Rptr. 257].)

A careful analysis of those cases, however, discloses that the problem facing the court was whether or not information contained in the affidavits in support of the search warrants had grown "stale" from the passage of time. The question presented here is whether the officer's information was in effect too "fresh."

Petitioner does not question, nor could he, the particularity with which the

matter sought and the premises to be searched are described in both the affidavit and the warrant. Furthermore, even the strictest and most scrutinizing examination of the material presented in Officer Tubbs' affidavit could only lead to the conclusion that he demonstrated adequate probable cause to believe that the parcel of marijuana would be on the premises at some time during the morning of December 13, 1969. It is not open to question that the parcel was evidence of a crime having been committed and in fact in the continuing process of being committed.

■ The entire thrust of the exclusionary rule and the cases which have applied it is to encourage the use of search warrants by law enforcement officials.

One of the major difficulties which confronts law enforcement in the attempt to comply with court enunciated requirements for a "reasonable" search and seizure is the time that is consumed in obtaining search warrants.

The speed with which law enforcement is often required to act, especially when dealing with the furtive and transitory activities of persons who traffic in narcotics, demands that the courts make every effort to assist law enforcement in complying with the edicts that the courts themselves have issued.

We must ask ourselves whether the objective of the rule is better served by permitting officers under circumstances similar to the case at bar to obtain a warrant in advance of the delivery of the narcotic or by forcing them to go to the scene without a warrant and there make a decision at the risk of being second-guessed by the judiciary if they are successful in recovering evidence or contraband. ■ We believe that achievement of the goals which our high court had in mind in adopting the exclusionary evidence rule is best attained by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future. Nowhere in either the federal or state Constitutions, nor in the statutes of California, is there any language which would appear to prohibit the issuance of a warrant to search at a future time.

This time period, of course, would be subject to the 10-day limitation which is set out in Penal Code section 1534.

We find support for our holding in *Katz* v. *United States,* 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], and in *Berger* v. *New York,* 388 U.S. 41 [18 L.Ed.2d 1040, 87 S.Ct. 1873], where our Supreme Court indicated

that it was constitutionally possible to obtain a search warrant for the seizure of oral communications through the use of electronic surveillance.

In *Katz,* the court said at page 354 [19 L.Ed.2d at p. 584]: ". . . it is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it [the electronic surveillance] *was to proceed,* and clearly apprised of the precise intrusion it would entail, *could constitutionally have authorized . . . the . . . search and seizure. . . .*" (Italics added.)

The acknowledgment of such a possibility clearly envisions a warrant that by the very nature of things would have to be issued in advance of the time that the subject matter to be seized was present on the premises. A warrant directing the seizing of a conversation could only be directed to words which would not be in existence until vocalized by the participants thereto.

*United States* ex rel. *Beal* v. *Skaff,* 418 F.2d 430 is squarely in point.

In that case a mail delivery of marijuana was to be made at about 12:34 p.m. A search warrant was issued at 12:15 p.m. The court where the warrant was issued was about 16 miles from the premises to be searched.

The court in upholding the warrant there said that the critical consideration in evaluating the validity of the warrant is a belief on the part of the magistrate that the warrant will not be *executed* prior to the commission of the crime or possession of the goods to be seized.

It is logical to assume that when officers obtain a warrant to search for and seize particular property which they have probable cause to believe will be on the premises at a specified future time, they would not be disposed to undermine the success of their efforts by premature execution of the warrant.

Furthermore, the magistrate, if he so desires, could insert in the warrant a direction that it be executed upon the occurrence of a given event or after the passage of a specified period of time.

 In summary, we conclude that the warrant in this case was validly issued and that the search conducted pursuant thereto was a reasonable search consistent with all of the safeguards envisioned by the federal and state Constitutions.

Rather than condemn their actions as "unreasonable" we commend the participants in this procedure for their thoroughness, imagination and scrupulous compliance with the law.

The alternative writ is discharged; petition for writ of mandate denied.

Fleming, Acting P. J., and Alarcon, J.,* concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 23, 1970.

.

*Assigned by the Chairman of the Judicial Council.