**STATE of Alaska, Petitioner,**

**v.**

**Charles E. SHELTON, Respondent.**

**No. 2905.**

Supreme Court of Alaska.

Aug. 27, 1976.

As Modified on Denial of Rehearing
Sept. 29, 1976.

Avrum M. Gross, Atty. Gen., Juneau, Harry L. Davis, Dist. Atty., David Mannheimer, Asst. Dist. Atty., Fairbanks, for petitioner.

Richard D. Pennington of Edgar Paul Boyko & Assoc., Anchorage, for respondent.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

ERWIN, Justice.

We granted review of this case to determine whether a suppression order entered by the superior court was appropriate under the circumstances.

▪ Respondent Charles Shelton was indicted for robbery in violation of AS 11.-15.240. His pre-trial motion to suppress evidence seized pursuant to a search warrant issued by a district court judge was granted,[1] and the State of Alaska petitioned for review.[2] Since the order of the superior court would likely result in terminating the prosecution[3] and involves a controlling question of law,[4] review by this court is appropriate.

For purposes of this opinion, the facts are not in dispute and may be briefly stated. At about 9:15 p. m. on January 19, 1976, Julia Fix, an employee of International Liquor Store in Fairbanks, noted a vehicle driving around the parking lot in a suspicious manner and copied down the license number. The vehicle's driver eventually parked and entered the store. He was wearing an Army-style parka, black ski mask with red trim around the eyes and mouth, black gloves, and gold rimmed sun glasses. Brandishing a small calibre, silver, automatic pistol, the masked man demanded money from Ms. Fix. She handed him approximately $225, which he placed in a brown paper bag before departing. The foregoing information was reported to the Fairbanks Police Department about 9:30 p. m. and shortly thereafter broadcast to law enforcement personnel.

After interviewing Ms. Fix at the liquor store, Trooper Ralph Shaffer was informed that the suspect vehicle was registered to Charles Shelton. As a consequence Shaffer returned to his office and began to prepare his affidavit for a search warrant. In the interim a record check had disclosed Shelton's address and the fact that there was an outstanding traffic warrant against him.

When a number of police officers arrived in the vicinity of Shelton's home, a couple who exited from the suspect's residence informed them that he was inside. The officers promptly decided to arrest Shelton on the traffic warrant and detain him until the search warrant could be obtained. When Trooper Pollitt knocked on the kitchen door, the person who answered did not fit the suspect's description. After Pollitt explained his purpose—to serve a traffic warrant—Shelton entered the room and was placed under arrest. After a patdown search and advisement of rights, Shelton and Trooper Pollitt sat down at the kitchen table. By this time several more law enforcement personnel were in the residence, seated in the kitchen or, because of inadequate space, seated in the adjacent living room. The living room was separated from the kitchen by a partition, with a doorway being the means of access.

---

1. Alaska R.Crim.P. 37(c).

2. "[T]he state can invoke our discretionary review jurisdiction in criminal cases where the matter sought to be reviewed involves a non-final order or decision of the superior court." *State v. Browder*, 486 P.2d 925, 931 (Alaska 1971).

3. Alaska R.App.P. 23(c)(1) allows the filing of a petition for review when an order affects a substantial right which " . . . in effect terminates the proceeding or action and prevents a final judgment therein . . .."

4. Alaska R.App.P. 23(d) permits the filing of a petition for review when a controlling question of law is involved.

While so seated Officer Pollitt observed a brown paper bag right before him on the kitchen table. In addition, he noted that Shelton was wearing gold rimmed sun glasses. Another trooper commented on an Army-style parka in the living room, which, apparently, was visible from the kitchen entry way. This information was promptly transmitted to Trooper Shaffer at the police department.

At approximately 12:00 midnight Officer Shaffer arrived at the residence of Judge Mary Alice Miller with his affidavit. While at her home he typed an additional paragraph to his proposed affidavit, reciting the presence of the articles seen by the officers at Shelton's residence. After about one-half hour had elapsed, the search warrant was issued. It was served at 12:55 a. m., and a number of articles were taken.

Prior to trial Shelton raised numerous objections to the search warrant, one of which is pertinent herein. Noting the command in the warrant directed service of ". . . this warrant (*between the hours of 7:00 a. m. and 10:00 p. m.*) (*at any time*) . . .," he argued that Judge Miller's failure to strike either bracket made the nighttime search (i. e., one between 10:00 p. m. and 7:00 a. m.) unlawful under Alaska Criminal Rule 37(a)(3)(iv).

At the evidentiary hearing Judge Miller testified that she recognized her signature authorizing the warrant and generally recalled the affidavit. She could not, however, testify as to what time of the day or night she issued the search warrant, only that it must have been issued before or after normal working hours. As to whether she intended that the search warrant could be served "at any time," she testified, "I just don't remember."

Based on the foregoing facts, the trial judge granted Shelton's motion to suppress the items seized from his home as a result of the nighttime search. The State thereupon filed this petition for review.

Alaska R.Crim.P. 37(a)(3)(iv) provides in pertinent part that:

The warrant . . . shall direct that it be served between 7:00 a. m. and 10:00 p. m., but if an affiant is positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time.

■ Under this rule the householder is entitled to the assurance that the judge[5] issuing the warrant has decided that the facts presented in the affidavit justify a nighttime search. It is our opinion, then, that the service of a search warrant between 10:00 p. m. and 7:00 a. m., to be valid, requires a determination by the issuing judge that it may be served "at any time."

Shelton contends, as he did in the trial court, that the seach of his residence, conducted at 12:55 a. m., was invalid because Judge Miller had not crossed out the superfluous language in the warrant. He asserts that it is mandatory that the judge exercise his or her discretion by inserting a direction on the face of the warrant.

■ Shelton's position, although adopted in some other jurisdictions,[6] is one we find untenable, for it focuses on formality rather than substance. We think the more reasonable view is one which allows the court to look to the circumstances surrounding the issuance of the warrant, instead of limiting the inquiry to its face.[7]

For if after scrutinizing the pertinent facts, including the judge's recollection on the matter, it can be determined that the judge exercised the discretion vested in him or her by Rule 37, but mere-

---

5. We are using the term judge in the generic sense to include all persons who are authorized to issue warrants.

6. *See People v. Mills*, 251 Cal.App.2d 420, 59 Cal.Rptr. 489 (1967); and *State v. Dalrymple*, 80 N.M. 492, 458 P.2d 96 (1969).

7. *See State v. Dudgeon*, 13 Ariz.App. 464, 477 P.2d 750 (1970).

ly failed to strike the appropriate words from the form, the protection guaranteed by the rule would not be circumvented if the warrant was upheld.

With the foregoing in mind we proceed to the facts of the case at bar. As previously noted, the record reveals that Judge Miller did not recall what time of the day or night she issued the warrant, nor did she know whether she had intended that it could be served "at any time." Hence, we are unable to rely on the judge's recollection of her intention at the time she issued the warrant, as would ordinarily be the case; and we are compelled to look to the surrounding circumstances.

The facts reveal that Officer Shaffer arrived at Judge Miller's home around midnight with an affidavit stating that he was positive that the property he was seeking was on Shelton's premises, as required for a nighttime search by Criminal Rule 37(a)(3)(iv). While at her residence seeking the search warrant, he used her typewriter to add a paragraph to his affidavit, which already stated that

> . . . It is believed that Charles E. Shelton or others located within 2340 Lakeview Terrace will destroy evidence if it is not seized shortly; and that if it is necessary to wait until 7:00 a. m. Jan. 20, 1976 to search the residence of the named defendant that it is likely to destroyed [sic] before execution of the warrant. . . .

 In view of the fact that the warrant was presented for Judge Miller's signature in the middle of the night, that the affidavit, which contained the requisite showing for nighttime service under Criminal Rule 37(a)(3)(iv), clearly asks for an immediate search, and that several troopers were waiting at Shelton's home for the arrival of the warrant, we think it strains credulity to come to the conclusion that it was the intent of Judge Miller to have Officer Shaffer wait until 7:00 a. m. to serve the warrant. The facts clearly indicate that nighttime service was contemplated and authorized.

We therefore find that although Judge Miller did not strike the superfluous language from the warrant and cannot recollect her intent at the time it was issued, the 1:00 a. m. search was valid since the surrounding circumstances clearly demonstrate that a nighttime search was intended [8] when the warrant was approved.[9]

The decision of the trial court is reversed, and this case is remanded for further proceedings in conformity with this opinion.

---

8. We note that at the top of the warrant form is a portion dealing with the probable cause necessary for issuance. Two alternatives are included in the form—the element of "positiveness" is required for the more extreme intrusion of a nighttime search, while the element "had reason to believe" is sufficient for searches other than those at night. Judge Miller crossed out the alternative "has/have reason to believe," leaving the alternative "is positive", thus indicating that she considered the evidence positive and meeting the necessary standard for nighttime search.

9. We thus find that the trial court was clearly erroneous in reaching its decision in this case.