Pia JOHNSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 3527.

Supreme Court of Alaska.

Sept. 19, 1980.

T. G. Batchelor, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellant.

Larry R. Weeks, Dist. Atty., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER,* and MATTHEWS, JJ., and DIMOND, Senior Justice.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

## OPINION

**MATTHEWS, Justice.**

This is an appeal from a conviction after a jury trial of distribution of cocaine in violation of AS 17.10.010.[1] The conviction rests in part upon evidence[2] which was seized pursuant to a search warrant from a residence in the nighttime.

In May of 1976, James McHaley approached Sergeant Windred of the Juneau Police Department and offered to help him "get the major ... [drug] dealer in the Juneau area," one Raymond Johnson. Windred had been investigating Raymond Johnson over a period of several years, spending many hours in accumulating evidence of his drug dealings. Windred had formally staked out Raymond's driveway for three days in 1975, and had kept a watch on the cabin through "countless" patrols in front of the cabin over a period of years.

Windred accepted McHaley's offer. In the weeks following, the two had several meetings and telephone conversations relating to drug dealings and dealers in the Juneau area in general, and to Raymond Johnson in particular. McHaley told Windred that Raymond was receiving weekly shipments of drugs from Seattle, and that the shipments were sometimes arranged by Johnson's wife Pia, the appellant here. At the same time that McHaley was reporting on Raymond Johnson's drug dealings, McHaley himself was involved in the local drug trade.

On June 18, 1976, McHaley reported to Windred that Raymond Johnson, from whom he had recently tried to purchase some drugs, told him that he was expecting a shipment of heroin on the following day. The drugs would be sent by appellant from Seattle via Gold Streak on Alaska Airlines. Windred promptly phoned the Seattle airport police with a description of appellant and a request to contact him if she showed up at the airport with a package destined for Juneau via Gold Streak. On the following evening, Windred got his call from Seattle and was informed that appellant, using an alias and acting unusually,[3] had dropped off a package at the Alaska Airlines counter consigned to Sherry Peters, for pick–up at the Juneau terminal. Sherry Peters is Raymond Johnson's sister. Windred got the waybill number and, after ascertaining the flight arrival time in Juneau to be 11:30 p. m., arranged to meet the District Attorney and a magistrate at a location near the airport to get a search warrant. On the way to the airport Windred prepared an affidavit to submit in support of the warrant.

Windred, the District Attorney, several other law enforcement officers, and Magistrate Siangco met in a Volkswagen bus near the airport. The proceedings before the Magistrate lasted approximately five minutes. Sergeant Windred submitted an affidavit in support of his request for a search warrant which is set forth in the margin.[4] In addition, he offered oral testi-

---

1. AS 17.10.010 provides:
 *Acts prohibited.* It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter.
 Appellant was indicted on two counts, one for distribution of heroin and one for cocaine. A mistrial was declared as to the heroin charge after the jury was unable to reach a verdict. That count was subsequently dismissed on motion of the District Attorney.

2. Other evidence included a statement appellant made when she read the complaint charg-

ing her with shipping heroin, to the effect that "it wasn't heroin at all. It was cocaine."

3. *See* note 4, p. 1121 *infra.*

4. The affidavit stated:
 In the Court of the State of Alaska
 First Judicial District at Juneau.

 AFFIDAVIT FOR SEARCH WARRANT

 STATE OF ALASKA, )
 : ss.
 FIRST JUDICIAL DISTRICT )

 I, Dennis Windred, Sgt. of Juneau Police Department, being duly sworn on oath, deposes

mony that he was positive that the drugs would be taken to Raymond's house. The warrant,[5] authorizing an immediate search of Johnson's premises, was then issued.

and says: That on or about the 19th day of June, 1976, in the First Judicial District State of Alaska, the crime of Possession of Heroin with Intent to Sell was committed in the manner following, to wit: by Raymond Johnson receiving a package of heroin weighing five pounds gross from Seattle, Washington, that affiant has and there is just, probable and reasonable cause to believe and he does believe there are now in the possession of Raymond Johnson and in and upon the premises and building known and designated as and commonly called Mile 4, North Douglas, Alaska, being a green cabin approximately 200 feet off the right side of the highway on shoreline with a combination lock on the front door in the First Judicial District, State of Alaska, including all rooms and buildings used in connection with said premises and buildings adjoining the same and in a receptacle or safe therein, certain items and property; which are in possession with the intent to use as a means of committing a public offense or in the possession of one to whom it was delivered for the purpose of concealing or preventing its being discovered and/or which constitutes evidence which tends to show that a felony has been committed and that the said Raymond Johnson committed said felony.

That the said articles and property are particularly described as follows: to wit: a package addressed to Sherry Peters, Weigh Bill No. 207X1972132 and contents thereof, heroin and related materials, that the following facts establish the existence of grounds for the issuance of a search warrant for the search of the said person, Raymond Johnson, for the search of the said premises and building and further establish probable cause for believing that the said grounds exist: I, Dennis Windred, state that as sergeant in charge of investigations at Juneau Police Department and have received information from an informant that Raymond Johnson is to be receiving a shipment of heroin via Alaska Airlines Gold Streak Package Service on June 19, 1976. The informant stated that he had gotten this information directly from Raymond Johnson. The informant has given me information in the past concerning illegal drug transaction that has been verified by independent investigation. The informant established that the package of heroin would be shipped by Pia Johnson (Raymond Johnson's wife) from Seattle, Washington. I alerted authorities in Seattle who have informed me that Pia Johnson did in fact deliver a five-pound package to Alaska Airlines for Gold Streak delivery addressed to Sherry Peters four minutes prior to Flight # 69 departing Seattle on 6 19 76. Sherry Peters is known by me to be Raymond Johnson's sister. Sgt. A. Dee Carter of the Seattle Port Authority informed me that she had identified Pia Johnson by Alaska Driver's License 528834. She stated that Pia Johnson was in her opinion under the influence of some drug at the time of the delivery of the package. Pia Johnson was unconscious in the lady's restroom of an apparent overdose of some drug for a period of 45 minutes immediately after delivery of the package. The informant here had informed me that Pia Johnson would be staying at 56 Milner Hotel in Seattle, which was verified by Seattle Port Authorities. Raymond Johnson is to my knowledge a known dealer in illegal drugs and has been for some years. He was arrested in 1972 for sale of drugs and is a convicted felon. Wherefore, affiant prays that a search warrant issue commanding that immediate search be made of the person of the said _____ and the premises and building described herein for the articles and property above described and that the same may be brought before a magistrate and disposed of according to law.

> Dennis Windred
> Affiant

Subscribed and sworn to before me this 19th day of June, 1976.

> Richard Siangco
> Judge

5. The search warrant stated:

### SEARCH WARRANT

| STATE OF ALASKA, | ) | |
|---|---|---|
| | : | ss. |
| FIRST JUDICIAL DISTRICT | ) | |

The People of the State of Alaska to any State Trooper, Constable, Marshal, Policeman or other Peace Officer in the First Judicial District:

Proof by affidavit, having been made this day by Dennis L. Windred and there is probable cause for believing that illegal drugs, heroin, and other materials are possessed by Raymond Johnson for purposes of sale, you are therefore commanded in the daytime or nighttime to make immediate search on the person of Raymond Johnson and the premises situated at Mile 4, North Douglas, being a green cabin approximately off right side of highway, for the following property: Gold Streak Express Package No. 027X1972132 for its contents being heroin or other materials. If you find the same or any part thereof, to bring it forthwith before me at the aforesaid court. Given under my hand and dated this 19th day of June, 1976.

> Richard Siangco
> Judge

After the issuance of the warrant, two police officers were dispatched to the airport by Windred to observe the delivery of the package. Sherry Peters claimed it and left in a truck driven by Scott LaFavour. They were followed into Juneau where the truck stopped to let LaFavour out. The truck then proceeded to Raymond Johnson's house with Windred and other police officers following at a distance. When the vehicle pulled into the driveway at Johnson's house, Windred and the others stopped several hundred feet short of the driveway.

The police waited a few minutes, then proceeded to the cabin. Raymond Johnson came to the door and opened it. The police announced their presence and told Johnson he was under arrest. Johnson ran back in the cabin, slamming the door. The police then broke through the door and arrested Raymond Johnson and Sherry Peters, who had apparently been in the process of diluting, and packaging narcotics. A search of the cabin revealed the opened Gold Streak package and a large quantity of cocaine and heroin.

Appellant moved to suppress the drugs and drug related paraphernalia seized during the search. The motion was denied. On appeal it is urged that this was error because, first, Alaska Rule of Criminal Procedure 37(a)(3)(iv) was violated.

Alaska Rule of Criminal Procedure 37(a)(3)(iv) requires that search warrants be ka 1978); *State v. Shelton,* 554 P.2d 404, executed in the daytime as a matter of course, "but if an affiant is positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time...."[6] In *State v. Shelton,* 554 P.2d 404, 407 n. 8 (Alaska 1976) we noted that a nighttime search was a more extreme intrusion than one conducted in the daytime and observed that "[u]nder this rule the householder is entitled to the assurance that the judge issuing the warrant has decided that the facts presented in the affidavit justify a nighttime search." *Id.* at 406 (Footnote omitted). The magistrate who issued the warrant in this case plainly made that determination. The question here is whether he erred in doing so.

■■■ In approaching questions of this sort, the decision of the judicial officer who has issued the warrant is to be given " 'great deference' and 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " *Ellsworth v. State,* 582 P.2d 636, 638 (Alaska 1978) (footnote omitted). Further, in resolving uncertainties and ambiguities with respect to search warrants and affidavits made to support them, the court should look to the circumstances surrounding the issuance of the warrant and need not artificially limit its inquiry to the writing itself. *Ellsworth v. State,* 582 P.2d 636, 638 (Alas-

**6.** Alaska R.Crim.P. 37(a) provides:

*Search Warrant Issuance and Contents.*
(1) A search warrant authorized by law shall issue only on
(i)(aa) affidavit sworn to before a judge or magistrate or any person authorized to take oaths under the law of the state, or
(bb) sworn testimony taken on the record in court, and
(ii) establishing the grounds for issuing the warrant.
(2) If the judge or magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant
(i) identifying the property, and
(ii) naming or describing the person or place to be searched.
(3) The warrant

(i) shall be directed to a peace officer of the state authorized to enforce or assist in enforcing any law thereof, and
(ii) shall state the ground or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof, and
(iii) shall command the officer to search forthwith the person or place named for the property specified, and
(iv) shall direct that it be served between 7:00 a. m. and 10:00 p. m., but if an affiant is positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time, and
(v) shall designate the judge or the magistrate to whom it shall be returned.

406 (Alaska 1976).

The positivity requirement expressed in Alaska Criminal Rule 37(a)(3)(iv) is nearly the same as that which was expressed by Federal Rule of Criminal Procedure 41(c) as it existed until 1972, when the requirement was deleted because it had been found cumbersome to apply in practice. *Gooding v. United States*, 416 U.S. 430, 453, 94 S.Ct. 1780, 1792, 40 L.Ed.2d 250, 266 (1974). Current Federal Rule of Criminal Procedure 41(c)(1) provides with respect to nighttime searches only that "The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime."[7]

Several cases construing the positivity standard as contained in the former federal rule did not construe it to require a significantly higher standard than probable cause. Thus, it was stated in *United States v. Daniels*, 10 F.R.D. 225 (D.C.N.J.1950):

> It is our opinion that the rule requires nothing more than an explicit statement, supported by positive evidence, as distinguished from negative evidence "that the property is in the place to be searched." The explicit statement may not rest upon inferences drawn from the absence of evidence. The rule requires averments of fact sufficiently persuasive to support a reasonable inference that the property is in fact on the premises. A more rigid

construction would require proof beyond a reasonable doubt that the property is in the place to be searched. Such a construction would enable the criminal to completely conceal an illegal enterprise behind an insurmountable barrier, provided, of course, he pursued it only at night.

*Id.* at 228. *See also United States v. Arms*, 392 F.2d 300 (6th Cir. 1968);[8] *United States v. Plemmons*, 336 F.2d 731 (6th Cir. 1964). State courts have given similar state provisions a like reading. *Stewart v. People*, 419 P.2d 650 (Colo.1966); *State v. Lindner*, 592 P.2d 852 (Idaho 1979).

■ If the positivity requirement were interpreted literally, it would be practically impossible to obtain a warrant to search premises at night. For example, if a police officer had observed drugs in a building, and then left the building in order to secure a warrant from the nearest available magistrate, he could not be positive that the drugs were in the building at the time that he gave the oath. The language must be construed to equate "positive" with being reasonably certain.

■ As so defined, we believe that the requirement of positivity expressed in Criminal Rule 37(a)(3)(iv) has been met. The affidavit is explicit and detailed. The ultimate source of the information was said to be Raymond Johnson and the informant who conveyed it was said to be reliable. Further, the circumstances concerning the shipment of the package were detailed and

7. The Model Code of Pre-Arraignment Procedure § SS 220.2 (Proposed Official Draft 1975) dealing with nighttime searches likewise expresses no requirement of positivity. We think there should not be a nighttime search where a daytime search would be as effective. However, the positivity requirement of our present rule is not aptly designed to accomplish this. We shall refer the question of whether our rule is in need of revision to our standing advisory committee on the Criminal Rules.

8. In this case the court drew an apt parallel to treatment of fact questions in jury trials on which the standard of proof is higher than a preponderance of the evidence, citing an opinion written by Judge Learned Hand, *United States v. Feinberg*, 140 F.2d 592, 594 (2nd Cir. 1944) in which the following is stated:

But courts . . . have generally declared that the standard of evidence necessary to send a case to the jury is the same in both civil and criminal cases; and that, given evidence from which a reasonable person might conclude that the charge in an indictment was proved, the court will look no further, the jury must decide, and the accused must be content with the instruction that before finding him guilty they must exclude all reasonable doubt. We agree with Judge Amidon . . . who refused to distinguish between the evidence which should satisfy reasonable men, and the evidence which should satisfy reasonable men beyond a reasonable doubt. While at times it may be practicable to deal with these as separate without unreal refinements, in the long run the line between them is too thin for day to day use. [Citations omitted].

suspicious, and corroborated the information conveyed by the informant.

■ Appellant also argues that the affiant, Sergeant Windred, did not state in the affidavit that he was positive that the drugs would be found and that this omission violated Criminal Rule 37(a)(3)(iv). Sergeant Windred, however, gave sworn oral testimony to the magistrate that he was positive.[9] While this testimony was not tape recorded, it was, in effect, summarized, for the word "definite" was written in the margin of Sergeant Windred's affidavit. We need not decide, however, whether this is sufficient compliance with the recorded testimony requirement of Criminal Rule 37(a)(1)(i)(bb)[10] because an explicit statement of positivity has not been required by courts interpreting like provisions. *See United States v. Arms*, 392 F.2d 300 (6th Cir. 1968); *United States v. Plemmons*, 336 F.2d 731 (6th Cir. 1964); *United States v. West*, 328 F.2d 16 (2d Cir. 1964); *Fry v. United States*, 9 F.2d 38 (9th Cir. 1925), *cert. denied*, 270 U.S. 646, 46 S.Ct. 347, 70 L.Ed. 778 (1926); *Giles v. United States*, 284 F. 208 (1st Cir. 1922); *United States v. Tolomeo*, 52 F.Supp. 737 (W.D.Pa. 1943); *United States v. Ghiorsi*, 31 F.2d 440 (N.D.Cal.1929); *United States v. Barbini*, 26 F.2d 237 (N.D.Cal.1928); *United States v.*

*Edwards*, 296 F. 512 (E.D.Mich.1924); *State v. Dudgeon*, 477 P.2d 750 (Ariz.App.1970); *State v. Snyder*, 468 P.2d 593 (Ariz.App. 1970), *cert. denied*, 400 U.S. 1001, 91 S.Ct. 475, 27 L.Ed.2d 452 (1971); *State v. Lindner*, 592 P.2d 852 (Idaho 1979).

■ Appellant also argues that the warrant was invalid because at the time of issuance, there was no doubt but that Raymond Johnson had not yet come into possession of the Gold Streak package, yet the warrant authorized an immediate search of his cabin. This case involves an anticipatory search warrant, that is, one which is based upon an affidavit showing probable cause that at some future time—but not presently—certain evidence will be at the location set forth in the warrant. *See generally* 1 W. LaFave, Search & Seizure, § 3.7(c) (1978). Such warrants are constitutionally permissible and not invalid for lack of present probable cause. *Id.* at 699–700.[11] They are not precluded by the statutory authority of AS 12.35.020(3) which requires only reasonable belief of possession of the item for issuance of the warrant, without specifying that possession must be contemporaneous with the issuance, as distinct from the execution, of the warrant. We construe the statute to encompass possession at the time of execution of the warrant, thus permitting the securing of anticipatory search warrants.

9. At the motion on the hearing to suppress Sergeant Windred testified as follows:
Question: What was the information provided to Judge Siangco? In addition to that in the affidavit?
Answer: That I knew the drugs were being taken to the Raymond Johnson residence, and that I knew the residence and had been there previously.
Question: Were you asked whether or not you were positive?
Answer: Yes.
Question: And what did you respond?
Answer: I replied that I was.
Question: Did you state that you swore that?
Answer: Yes.

10. *See Milne v. State*, 607 P.2d 360, 362 (Alaska 1980).

11. For an anticipatory warrant to be valid, there must be probable cause to believe that the items to be seized will be at the place to be searched at the time the warrant is executed, or in other words, that the warrant will not be

prematurely executed. *See United States ex rel. Beal v. Skaff*, 418 F.2d 430, 433 (7th Cir. 1969); *People v. Glen*, 30 N.Y.2d 252, 331 N.Y. S.2d 656, 659, 282 N.E.2d 614, 617 (1972). In this case, it was reasonable to conclude that the police would not frustrate their efforts to apprehend Raymond Johnson in possession of the drugs by executing the warrant before the package was delivered to him. *See Alvidres v. Superior Court*, 12 Cal.App.3d 575, 579, 90 Cal. Rptr. 682, 686 (1970). We think it most appropriate in anticipatory warrant situations, that the magistrate insert a direction in the search warrant making execution contingent on the happening of an event which evidences probable cause that the item to be seized is in the place to be searched, rather than directing that the warrant be executed immediately or forthwith. As applied to the instant case, the warrant should have stated that execution was authorized only after the police had probable cause to believe that the package had been delivered to Raymond Johnson.

■ Appellant also argues that the positivity requirement can never be met in an anticipatory warrant situation. No direct authority, however, is cited for this proposition, and we reject it. Just as anticipatory warrants based on probable cause are constitutionally permissible "as long as the evidence creates a substantial probability that the seizable property will be on the premises when searched," *People v. Glen*, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 661, 282 N.E.2d 614, 617 (1972),[12] such a warrant may be issued where positivity is the standard.

■ Appellant also argues that even if it is accepted that Sergeant Windred's affidavit is phrased with the required degree of positivity, the affidavit is nonetheless insufficient because it states that Raymond Johnson is "to be receiving a shipment of heroin" on the one hand, and on the other hand that said items are "now" in the possession of Raymond Johnson. This alleged inconsistency is, we think, little more than a quibble. A fair reading of the affidavit makes it clear that Raymond Johnson is about to receive a specifically identified package containing illegal drugs. The language that the package is now in the possession of Raymond Johnson is part of the printed form of the affidavit, whereas the future tense language is in handwriting. Under the circumstances, we do not believe that there was any room for doubt as to the true situation.

Appellant also argues that the premises to be searched were inadequately described. The warrant authorizes the search of premises situated at "mile 4 Douglas, being a green cabin approximately on the right side of the highway." The affidavit added the information that the cabin was "approxi-

mately 200 feet off the right side of the highway on the shoreline with a combination lock on the front door." Appellant points out that the cabin was not green, but rather rust red, was not on the shoreline but located about 100 feet above maximum high tide, was located not approximately 200 feet off of the road, but approximately 300, and was not exactly at mile 4 but rather was 210 feet from the 4 mile marker.

■ The requirement that places to be searched be particularly described is ordinarily said to be met "if the description is such that the officer with the search warrant can, with reasonable effort, ascertain and identify the place intended. ..." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed.2d 757, 760 (1925). Technical accuracy is not required, and if there is no reasonable probability that the wrong premises will be searched, the description is sufficient. *United States v. Darensbourg*, 520 F.2d 985, 987 (5th Cir. 1975). The burden of proof on questions pertaining to the sufficiency of a warrant description is on the challenger.[13]

Here that burden was not met. The only actual misidentification of the premises was that it was described as green rather than red. But the record shows that there were no green cabins in the area and the officer who was to execute the warrant, Sergeant Windred, was personally familiar with the house to be searched since he had kept watch on it in the past.

Appellant contends that in meeting the police at the parking lot and by issuing the warrant within just a few minutes after the affidavit was presented to him, Judge Siangco failed to act in a neutral and detached manner and thereby deprived Pia Johnson of her constitutional rights.[14]

---

12. *See generally United States ex rel. Beal v. Skaff*, 418 F.2d 430, 433 34 (7th Cir. 1969); *Alvidres v. Superior Court*, 12 Cal.App.3d 575, 90 Cal.Rptr. 682 (1970); 1 W. LaFave, *Search and Seizure*, § 3.7(c) (1978).

13. *State v. Rood*, 573 P.2d 1325, 1328 n. 5 (Wash.App.1977). *See Chin Kay v. United States*, 311 F.2d 317, 321 (9th Cir. 1962); *Brandon v. United States*, 270 F.2d 311, 313 (D.C. Cir.1959), *cert. denied*, 362 U.S. 943, 80 S.Ct.

808, 4 L.Ed.2d 771 (1960). *See also* 3 C. Wright, *Federal Practice and Procedure*, § 675, at 126–27 (1969).

14. The fourth amendment does not explicitly require that probable cause be found by a neutral and detached magistrate, but in *Coolidge v. New Hampshire*, 403 U.S. 443, 449, 91 S.Ct.

 There is a presumption that a judicial officer acts in a neutral and detached manner when he issues a warrant.[15] A magistrate does not lose his neutral and detached character "merely because he leaves his regular office in order to make himself readily available to law enforcement officers who may wish to seek the issuance of warrants by him." *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 328 n.6, 99 S.Ct. 2319, 2325 n.6, 60 L.Ed.2d 920, 930 n.6 (1979). Sergeant Windred had a short period of time in which to secure a warrant. In light of the exigencies of the situation it was not improper for Judge Siangco to meet him at the parking lot near the airport.

 The amount of time spent in reviewing the affidavit is not by itself controlling. The purpose of requiring that warrants be issued by a neutral and detached magistrate is to assure that the inference of probable cause is drawn by a person who is not in "a position to be influenced by personal or professional motives."[16] What is required of that person is "severance and disengagement from activities of law enforcement."[17] Judge Siangco's connection with this case did not extend beyond the issuance of the warrant to either the investigation or the arrest. Further, he did not merely read the affidavit and issue the warrant. He had Sergeant Windred give additional sworn testimony so that he could be fully satisfied that a warrant should issue. Appellant has failed to show that he acted in other than a neutral and detached manner.

 Appellant's next argument is that the magistrate had no adequate basis on which to judge the probable credibility of the informant referred to in the affidavit. The affidavit states that the informant was told by Raymond Johnson that he was to be receiving a specific shipment of heroin and relates that the informant had given the affiant reliable information in the past concerning illegal drug transactions. We held in *Keller v. State*, 543 P.2d 1211, 1216 (Alaska 1975) that a showing of probable credibility of a confidential informant is adequate where the affidavit alleges "that the informant had given accurate information in the past." That standard has been met here. Further, the probable reliability of what the informant had said was corroborated by the fact that the shipment had occurred as forecast, and by the bizarre conduct of appellant at the time she delivered the package for shipment.

 Appellant also claims as error the court's refusal to grant her motion to dismiss because of alleged improper police conduct. The conduct complained of is said to be a form of entrapment, but we can be no more specific than that because no evidentiary showing of any entrapment or other police misconduct was made. The motion, therefore, was properly denied.

Appellant also argues that she was unduly restricted in conducting cross–examination of Sergeant Windred. Specifically, the court sustained the prosecutor's objection to a question whether the informant, McHaley, had told Sergeant Windred about specific drug sales that he had allegedly made. However, any error was corrected when the objection to that line of questioning was later withdrawn.

2022, 2029, 29 L.Ed.2d 564, 572–73 (1971), the Supreme Court held that neutrality is constitutionally required. In *Keller v. State*, 543 P.2d 1211 (Alaska 1975) we stated:

> The purpose of the warrant requirement is to prevent the police from hasty, ill–advised or unreasonable actions in "the often competitive enterprise of ferreting out crime." The law allows the police to infringe upon a person's fundamental right to be free from search and seizure only when such infringement is reasonable. The conclusion that the imposition is reasonable should not be drawn

> by the very persons who are the agency for the deprivation of rights.
>
> *Id.* at 1219 (citation omitted) (footnote omitted).

**15.** *See generally Shadwick v. City of Tampa*, 407 U.S. 345, 351, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783, 789 (1972).

**16.** *Keller v. State*, 543 P.2d 1211, 1220 (Alaska 1975).

**17.** *Shadwick*, 407 U.S. at 350, 92 S.Ct. at 2123, 32 L.Ed.2d at 789.

Appellant's final contention is that the trial court erred in excluding testimony of two witnesses who would have given testimony pertaining to the bad character of the informant, McHaley. However, McHaley never testified in the case. Therefore the court was plainly acting within the scope of its discretion in excluding the offered testimony as collateral. *See Jones v. State,* 576 P.2d 997 (Alaska 1978).

The judgment is AFFIRMED.

CONNOR, Justice, dissenting.

I respectfully dissent on the issue of whether the positivity requirement for obtaining a nighttime search warrant was satisfied. Alaska R.Crim.P. 37(a)(3)(iv) restricts the execution of search warrants to daytime hours, absent special circumstances, in recognition of the far greater intrusion upon privacy engendered by nighttime searches. Where the warrant is to be served at night, Criminal Rule 37 specifically requires that the affiant, at the time of the making of the affidavit, be "positive that the property [to be searched for] is on the person or in the place to be searched." Compliance with this requirement is particularly necessary where the warrant is issued for the search of a residence, since "it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home." *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514, 1519 (1958).

I am unable to find any statement in the affidavit of Sgt. Windred which would support a factual showing of positivity. The affiant states specific facts upon which he based his belief that a shipment of drugs was to arrive at the Juneau airport, but gives no indication as to how it was known that the items to be seized would be found in Raymond Johnson's house. There is no reason to assume with any degree of positivity, on the basis of the information contained in the affidavit, that the shipment of drugs would be taken from the airport to Raymond Johnson's house.

Nor can I agree with the majority that any deficiency in the affidavit was cured by Sgt. Windred's sworn statement that he was positive that the materials would be there or by Sgt. Windred's scribbling in the margin of the affidavit the word "definite." For good reason, sworn testimony presented to support a defective affidavit must be placed "on the record in court" at the time it is given. Alaska R.Crim.P. 37(a)(1)(i)(bb). Since there is no record of Sgt. Windred's testimony before the issuing magistrate, it should not be used to uphold the warrant. And even if oral testimony of this nature could properly be considered by the issuing magistrate, neither Sgt. Windred's conclusory statements to the magistrate, nor the appendage of the word "definite" to the affidavit satisfies the "imperative that a magistrate be presented with adequate supporting facts, rather than mere affirmations of suspicion or belief." *Keller v. State,* 543 P.2d 1211, 1215 (Alaska 1975).

I would hold that there was an insufficient showing that the items to be seized would be found at Raymond Johnson's house to support the issuance of a warrant for a nighttime search. In my opinion, the majority's holding to the contrary obliterates the explicit positivity requirement of Rule 37.