THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHOLAS GALDINE, Defendant-Appellant.

Second District   No. 2—90—0097

Opinion filed April 22, 1991.—Rehearing denied May 28, 1991.

474

INGLIS, J., specially concurring.

Douglas R. Roberts, of Law Offices of Douglas R. Roberts, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Nicholas Galdine, appeals his convictions of unlawful possession of cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1402) and possession with intent to deliver cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401.2(2)). The sole issue on appeal is whether the denial of defendant's motion to suppress the evidence was against the manifest weight of the evidence.

Defendant was charged by indictment with unlawful delivery of cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)) in addition to the other two offenses. All three charges arose out of a raid on defendant's office on March 4, 1989. Defendant filed a motion to suppress the evidence obtained by a warrantless search of his office. Defendant also filed a motion to suppress the contents of several recordings made of conversations of an informant, Alan Lothar.

The following facts were adduced from the evidence presented at the hearing on the motion to suppress. Sylvester Hampton, a member of the Lake County Metropolitan Enforcement Group (LMEG), met Lothar in February 1989. Lothar was working for LMEG, making purchases of cocaine from defendant. By the end of February, Lothar had purchased cocaine from defendant twice. On March 2, 1989, Hampton and Lothar attempted to arrange a sale of cocaine by defendant at which time he would be arrested. The purchase was to have been made at defendant's office in Antioch, Illinois. LMEG officers obtained judicial authorization to record telephone conversations between Lothar and defendant. Lothar was unable to arrange a meeting on March 2, 1989, because defendant

did not have any cocaine at that time. Defendant informed Lothar that he would page Lothar when the cocaine arrived. Lothar was then to page Hampton.

Hampton did not get a search warrant on March 2 for the office because he was told by an assistant State's Attorney that there was no need for a search warrant. Hampton presented an affidavit to the trial court seeking authorization for the eavesdropping, which was granted.

At 10 a.m. on March 4, 1989, Lothar paged Hampton. Lothar informed Hampton that defendant had the cocaine and Lothar was to buy 16 ounces for $16,800 at 2 p.m. that afternoon. Hampton then called Agent Mason and told him they "were ready to do the deal" and to contact various law enforcement personnel to meet at the Antioch police department, from which they would proceed to the place of the purchase and arrest.

Sixteen officers from several different agencies were present at the noon meeting at the Antioch police department. In addition, a photojournalist from a local newspaper had also been called to the meeting to participate in the arrest as an observer. The officers discussed the plan that Lothar would wear a "wire" when he went to defendant's office. The officers planned that the buy would take place in the parking lot, but if defendant would not leave the office building, the officers "would break in and arrest Mr. Galdine and get the cocaine." Lothar drew a diagram of the office building and pointed out which office belonged to defendant.

The police in Kenosha County, Wisconsin, had a search warrant for defendant's home in Twin Lakes. The LMEG officers advised the Kenosha County officers that they should wait to execute the search warrant until after defendant was arrested in Antioch.

After the meeting, the officers set up surveillance outside defendant's office. Mason and an evidence technician monitored the electronic eavesdropping device that Lothar was wearing. At 2 p.m., Mason called Lothar and told him to go to defendant's office. Hampton picked up Lothar and drove him there. Lothar entered the building and asked for defendant. Shortly thereafter, defendant arrived and met with Lothar.

Lothar told defendant that his buyer had the money. Defendant said he had the 16 ounces and he had 2 more ounces at his home. Defendant asked if Lothar still wanted 16 ounces, and Lothar stated that he did. Defendant asked if Lothar wanted to see the goods before Lothar went to get the money. Upon seeing the chunk of cocaine, Lothar remarked on its solidity and odor. Lothar told

defendant that he had to call his buyer and then called Mason on his car phone and told Mason he had seen the cocaine. Lothar attempted to get defendant to come out of the building to deliver the cocaine, but defendant refused. Lothar exited the building and said:

> " 'Well, folks, he's not going for it. Do you like just wanna bust in? It was the office we thought it was. It's adjoined to the reception room, so you are just going to have to come in and, ah, take it.' "

Mason then gave the signal to the other officers to make the arrest.

The evidence is controverted regarding whether the officers entered through the front and back doors of the building or just through the front. One of the officers kicked open a locked inner door. The security guard and defendant were told to lie down. Lothar told Hampton that the cocaine was in the right drawer of defendant's desk. Hampton recovered the cocaine. Defendant was then arrested and taken into custody.

Defendant argued that the police should have obtained a search warrant for the office and, since they made a warrantless entry and search, the evidence must be suppressed. The court took judicial notice of the weekend warrant procedures in Lake County and noted that a warrant could be obtained in two hours. According to defendant, at 10 a.m. on March 4, 1989, the police knew that there was cocaine in defendant's office. Defendant asserted that the police had ample time to get a search warrant before the meeting at the police department at 1 p.m. The State responded that the police could not have gotten a search warrant because they did not have probable cause prior to the time Lothar saw the cocaine in the office. Thus, according to the State, the warrantless entry was proper because of exigent circumstances.

The court found that there would not have been probable cause to issue a warrant until someone knew there were drugs in the building. The warrant could not have issued on March 2 because there were no drugs in the office on March 2, 1989. The court stated, "it wasn't until the informant was there with the wire on him that the police for the first time would have had probable cause to get a warrant." The court denied the motion to suppress on the ground that there were exigent circumstances which justified the warrantless entry.

Defendant filed a motion to reconsider the ruling. The court, in denying the motion to reconsider, explained that the warrant question was moot because a crime was committed in the police officers' presence and, therefore, they had a right to enter the building to

make the arrest. The court concluded that the search was incident to the arrest of defendant.

The State nol-prossed count I of the indictment, and defendant proceeded to a stipulated bench trial on the remaining two counts. In addition to the evidence presented at the suppression hearing, the parties stipulated to the following testimony. Agent Hampton would have testified that after defendant was arrested, he asked for his coat. Hampton searched the pockets before giving the coat to defendant and found two ounces of cocaine.

Lothar would have testified that he used to work for defendant and that on January 30, 1989, defendant asked Lothar to sell cocaine. Lothar contacted his stepfather, a police officer, who contacted Hampton. Lothar agreed to work with LMEG until defendant would be arrested. On February 28, 1989, Lothar and defendant agreed that defendant would obtain 16 ounces of cocaine and that Lothar would give defendant $16,800 for it. On March 2, 1989, Lothar had several telephone conversations with defendant which were recorded. The transaction did not take place on March 2 as anticipated. Defendant informed Lothar on March 4, 1989, that the deal was ready to proceed. Lothar informed Hampton and then met with other LMEG agents at the Antioch police department. An evidence technician placed a wire on Lothar.

Lothar met defendant at his place of business. They discussed the transaction of 16 ounces of cocaine for $16,800. Defendant indicated that the cocaine was in the ceiling of the office. Lothar stood on a chair, lifted a ceiling tile and retrieved the 16 ounces of cocaine. Defendant put the cocaine in the desk drawer. Lothar then telephoned Agent Mason to inform him that Lothar had seen the cocaine. Lothar left the building, the arrest signal was given, and Lothar returned to the building after the police officers went in. Lothar showed Hampton where defendant had put the cocaine.

The parties submitted into evidence transcripts of the telephone conversations between defendant and Lothar on March 2, 1989, and of the conversations Lothar had when he wore the wire on March 4, 1989. The first telephone call was made on March 2, 1989, at 3:28 p.m. Lothar called defendant at work. Lothar indicated that he had been waiting for defendant to page him. Defendant told Lothar that their plans would probably not go through for that evening. Defendant was waiting for someone to call him. Defendant said, "[D]on't come up here. As it stands, don't waste your time, don't come up here *** till I call you." Defendant said he would page Lo-

thar, who responded that if he did not hear from defendant in a few hours, Lothar would call defendant.

At 5:10 p.m., Lothar again called defendant at work. Defendant still had not received the phone call, so while Lothar was on hold, defendant tried to call the person again. Defendant returned to the line and said that no one answered the telephone. They discussed the quantity Lothar needed to purchase and agreed that Lothar would call defendant back a short while later.

Lothar called defendant's office a third time at 6:10 p.m. Defendant still had not heard anything. Defendant told Lothar that he could not "make up a time and say ya, and then have you drive all the way over and *** it doesn't happen." Defendant believed that they would be able to do it the following day. However, if not, they would "have to go back to plan A," dealing with small amounts. Defendant said he would page Lothar if he found out anything and that defendant was going home.

At 7 p.m., Lothar called defendant at home. Defendant had made contact with the person, who "said he'd need one[,] maybe two more days." Defendant explained that he believed it would be the next day or Saturday, March 4. Defendant thought it was probably the next day, but noted that he still had to wait for the phone call the next afternoon because nothing was definite. Defendant said he would page Lothar as soon as he found out. Lothar told defendant, "When you come up with it, try and make a definite absolute time *** [and] make sure you have it." Defendant agreed. Lothar said that if defendant got "it" the next day, Lothar would meet defendant "at work and take care of it."

The court found defendant guilty. Defendant filed a post-trial motion preserving the suppression issue. The court denied the motion before proceeding to sentencing. Defendant was sentenced to 24 years' imprisonment for the unlawful possession with the intent to deliver conviction and 10 years' imprisonment for the unlawful possession conviction. Both sentences were to run concurrently with each other and with the sentence imposed by the court in Wisconsin. The court also ordered defendant to pay a street value fine of $55,470. Defendant's timely appeal followed.

■ On appeal, defendant contends that the circuit court's denial of his motion to suppress was against the manifest weight of the evidence. Initially, we note that a trial court's denial of a motion to suppress will not be overturned on review unless it is clearly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) However, when neither the facts nor the credibility of the witnesses is contro-

verted, the question presented is a legal one which the reviewing court may consider *de novo. People v. Foskey* (1990), 136 Ill. 2d 66, 76.

■ In presenting a motion to suppress, the burden of proof is on the defendant to make a *prima facie* showing that the police illegally obtained the evidence. (*People v. Neal* (1985), 109 Ill. 2d 216, 218.) Once the defendant has sustained his burden, the State must then show the legal justification for the search. *Village of Gurnee v. Gross* (1988), 174 Ill. App. 3d 66, 69.

■ It is well established that warrantless searches are *per se* unreasonable unless one of the limited exceptions to the warrant requirement applies. (*Payton v. New York* (1980), 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380; see also *Minnesota v. Olson* (1990), 495 U.S. 91, 100, 109 L. Ed. 2d 85, 95-96, 110 S. Ct. 1684, 1690.) This rule applies to commercial premises as well as homes. (*Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 311-12, 56 L. Ed. 2d 305, 310-11, 98 S. Ct. 1816, 1819-20.) When the police have knowledge of the existence and location of property which they have probable cause to believe is possessed illegally and they have an opportunity to obtain judicial authorization for the search, the fourth amendment requires that they follow this procedure. *Coolidge v. New Hampshire* (1971), 403 U.S. 433, 472-73, 29 L. Ed. 2d 564, 586-87, 91 S. Ct. 2022, 2041-42.

Defendant argues that it was unreasonable for the police to enter the premises and search for the cocaine without a warrant because at 10 a.m. on March 4, 1989, they had probable cause to believe there would be cocaine in the office. The State responds that the officers could not have obtained a search warrant prior to the time Lothar informed the officers that he saw the cocaine in the office because they did not have probable cause to believe the cocaine would be there. In support of its argument, the State points to the facts that the two previous transactions between defendant and Lothar occurred in defendant's home and that the efforts to set up the transaction for March 2 had been unsuccessful.

■ "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts ***." (*Illinois v. Gates* (1983), 462 U.S. 213, 232, 76 L. Ed. 2d 527, 544, 103 S. Ct. 2317, 2329.) A probable cause determination should be based on a "totality-of-the-circumstances analysis." (*Gates*, 462 U.S. at 233, 76 L. Ed. 2d at 545, 103 S. Ct. at 2329.) The trial court in the present case concluded that there was no probable cause to issue a search

warrant prior to the time the police actually knew the cocaine was on the premises.

■■ The warrant requirement acts as a check on police officers "engaged in the often competitive enterprise of ferreting out crime" by interposing a "neutral and detached magistrate" into the process. (*Johnson v. United States* (1948), 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369.) "Those suspected of drug offenses are no less entitled to that protection than those suspected of nondrug offenses." *United States v. Karo* (1984), 468 U.S. 705, 717, 82 L. Ed. 2d 530, 543, 104 S. Ct. 3296, 3304.

■■ A warrant based on an affidavit showing probable cause that at some future time certain evidence of crime will be located in a specified place is termed an "anticipatory search warrant." (2 W. LaFave, Search & Seizure §3.7(c), at 94 (2d ed. 1987).) Illinois courts have not yet addressed the question whether an "anticipatory search warrant" is permissible. The majority of courts which have confronted this issue have concluded that such warrants are constitutional. (*United States v. Garcia* (2d Cir. 1989), 882 F.2d 699, *cert. denied sub nom. Grant v. United States* (1989), 493 U.S. 943, 107 L. Ed. 2d 336, 110 S. Ct. 348; *United States v. Dornhofer* (4th Cir. 1988), 859 F.2d 1195, *cert. denied* (1989), 490 U.S. 1005, 104 L. Ed. 2d 155, 109 S. Ct. 1639; *United States v. Hale* (9th Cir. 1986), 784 F.2d 1465, 1468, *cert. denied* (1986), 479 U.S. 829, 93 L. Ed. 2d 59, 107 S. Ct. 110; *United States v. Lowe* (6th Cir. 1978), 575 F.2d 1193, 1194, *cert. denied* (1978), 439 U.S. 869, 58 L. Ed. 2d 180, 99 S. Ct. 198; *United States ex rel. Beal v. Skaff* (7th Cir. 1969), 418 F.2d 430, 432-34; *Johnson v. State* (Alaska 1980), 617 P.2d 1117, 1124-25; *State v. Cox* (1974), 110 Ariz. 603, 608, 522 P.2d 29, 34; *Alvidres v. Superior Court* (1970), 12 Cal. App. 3d 575, 581, 90 Cal. Rptr. 682, 686; *Bernie v. State* (Fla. 1988), 524 So. 2d 988, 991; *State v. Wright* (1989), 115 Idaho 1043, 1049-53, 772 P.2d 250, 256-59; *Russell v. State* (1979), 182 Ind. App. 386, 390-401, 395 N.E.2d 791, 798-800; *Commonwealth v. Soares* (1981), 384 Mass. 149, ____, 424 N.E.2d 221, 224-25; *State v. Doyle* (Minn. 1983), 336 N.W.2d 247, 252; *State v. Mier* (1977), 147 N.J. Super. 17, 20, 370 A.2d 515, 517-18; *People v. Glen* (1972), 30 N.Y.2d 252, 258-59, 331 N.Y.S.2d 656, 661, 282 N.E.2d 614, 617, *cert. denied* (1972), 409 U.S. 849, 34 L. Ed. 2d 91, 93 S. Ct. 58; *Commonwealth v. Reviera* (1989), 387 Pa. Super. 196, 201-05, 563 A.2d 1252, 1254-56; *State v. Sachs* (1975), 264 S.C. 541, 566 n.12, 216 S.E.2d 501, 514 n.12; *State v. Coker* (Tenn. 1987), 746 S.W.2d 167, 170, 172, *cert. denied* (1988), 488 U.S. 871, 102 L. Ed. 2d 149, 109 S. Ct. 180; *McNeill v.*

*Commonwealth* (Va. App. 1990), 395 S.E.2d 460, 463.) Moreover, the Supreme Court has indicated that such anticipatory search warrants are permissible, if not required, in certain cases. See *Karo*, 468 U.S. at 718, 82 L. Ed. 2d at 543, 104 S. Ct. at 3305; *Katz v. United States* (1967), 389 U.S. 347, 354-56, 19 L. Ed. 2d 576, 584-85, 88 S. Ct. 507, 512-14; *Berger v. New York* (1967), 388 U.S. 41, 62-63, 18 L. Ed. 2d 1040, 1054-55, 87 S. Ct. 1873, 1885.

In *United States v. Garcia* (2d Cir. 1989), 882 F.2d 699, the United States Court of Appeals for the Second Circuit examined the question in depth. The defendant in *Garcia* challenged an anticipatory search warrant, arguing that such warrants are unconstitutional *per se* because they are not based on probable cause but on the expectation that, at some point in the future, probable cause would arise when the contraband would be delivered to the subject premises. In rejecting this argument, the *Garcia* court explained:

> "An anticipatory warrant, by definition, is a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void.
>
> This is not to say, however, that such warrants are not based on probable cause. To the contrary, when a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant. [Citation.] Thus, the fact that the contraband is not 'presently located at the placed described in the warrant' is immaterial, so long as 'there is probable cause to believe that it will be there when the search warrant is executed.' \*\*\*
>
> \*\*\*
>
> Courts—though not yet the Supreme Court, to be sure—have upheld the anticipatory warrant, in large part, because they see it as desirable, whenever possible, for police to obtain judicial approval before searching private premises."

(*Garcia*, 882 F.2d at 702-03.)
The court concluded that the objective of the fourth amendment is better served by allowing the police to obtain a warrant in advance of a delivery, rather than have the police go to the scene and proceed under the exigent circumstances exception to the warrant requirement. *Garcia*, 882 F.2d at 703.

■ When issuing an anticipatory search warrant, the judge must assure that the warrant will not be executed prematurely by

making the execution of it contingent on the occurrence of specific events or the passage of a specific period of time. (*Garcia*, 882 F.2d at 703-04; *Reviera*, 387 Pa. Super. at 203, 563 A.2d at 1256.) For a valid search warrant to have issued in this case, the police would have had to present an affidavit showing that the informant believed a transfer of cocaine would be made on March 4, 1989, at 2 p.m. at defendant's office; how he arrived at this belief; the reliability of the informant; and the part the law enforcement officers would play in the controlled buy. See *Garcia*, 882 F.2d at 703.

The State maintains that the trial court was correct in denying the motion to suppress because there were exigent circumstances to justify the warrantless search and arrest (*Payton*, 445 U.S. at 583, 63 L. Ed. 2d at 648, 100 S. Ct. at 1378; *People v. Abney* (1980), 81 Ill. 2d 159, 168). According to the State, *People v. Eichelberger* (1982), 91 Ill. 2d 359, controls the issue in this case.

We believe that *Eichelberger* is distinguishable from the present case in several crucial respects. First, as noted above, there was probable cause for a warrant to be issued in advance in this case. Unlike *Eichelberger*, where the police did not know if the defendant had any contraband, here the deal was already set up, including the amount and price. In addition, there was an unjustifiable delay in procuring a warrant, as the trial court took judicial notice of the fact that a search warrant could be obtained within two hours in Lake County on a weekend and the officers learned at 10 a.m. that the buy would take place at 2 p.m., and the officers in charge had time to notify a photojournalist and wait 45 minutes to an hour for him to make the trip from his home to the Antioch police department. Finally, the entry in this case was not peaceful, since the officers had to kick open a locked door.

This case is more similar to *United States v. Paul* (7th Cir. 1986), 808 F.2d 645, wherein a confidential informant arranged to buy an amount of drugs from the defendant for a set price. In three taped telephone conversations between the defendant and the informant, the defendant indicated that the sale would take place on September 6. In the last call, made at 9 a.m. on the day of the sale, the defendant told the informant to bring the money to the defendant's home at 11 a.m. The informant was equipped with a beeper, which he was to activate upon seeing the drugs. The informant entered the house, saw the drugs, and activated the beeper. The agents entered the house, saw the drugs and arrested the defendant. The United States Court of Appeals for the Seventh Circuit found that the search of the defendant's house was not

within the exigent circumstances exception to the warrant requirement. *Paul*, 808 F.2d at 647.

■ Our supreme court has considered similar factors when determining whether exigent circumstances exist in a particular case. (See *People v. Foskey* (1990), 136 Ill. 2d 66.) Even though the offense may be grave, if the suspect's conduct does not constitute "an immediate and clear danger to the police or to the safety of those around him," there is no exigency. (*Foskey*, 136 Ill. 2d at 78.) Similarly, "no exigency is created simply because there is probable cause to believe that a serious crime has been committed." (*Welsh v. Wisconsin* (1984), 466 U.S. 740, 753, 80 L. Ed. 2d 732, 745, 104 S. Ct. 2091, 2099.) When determining the existence of exigent circumstances, the overriding concern is the reasonableness of the police conduct. *People v. Cobb* (1983), 97 Ill. 2d 465, 484.

■ Although the offense at issue here is a serious one, there was nothing to suggest that defendant was an immediate danger to the police or to the informant. There was nothing to indicate that defendant might have had a weapon, as he was not known to be dangerous and the informant never saw a weapon. There is no evidence to suggest that defendant was aware that Lothar was an informant, and defendant's suspicions would not have been aroused by Lothar's departure from the office, as Lothar informed defendant that he had to get the money from his customers. Thus, it was unlikely that his immediate apprehension was necessary to prevent defendant's flight or the destruction of the evidence. Finally, the police had probable cause and ample time to obtain a warrant. Under such circumstances, the police cannot set up a controlled buy of drugs and then claim that exigent circumstances justify a warrantless entry.

Although exigent circumstances which would justify the warrantless search of defendant's premises do not exist in this cause, nevertheless, there is another basis upon which the lawfulness of the search can be sustained. In *United States v. Paul*, Moore, a confidential police informant, arranged with Paul to buy a bale of marijuana. Moore, equipped with an electronic transmitting device, went to Paul's house, where Paul took him to the basement and showed him the bale of marijuana. Moore activated the transmitter, and the police, after knocking, entered the house and arrested Paul. The reviewing court, while determining that the warrantless entry was not justified by exigent circumstances, upheld the search on the basis of consent, stating as follows:

"Paul invited Moore into his house and down to the basement, where the marijuana was in plain view. If Moore had been a police undercover agent rather than a confidential informant, he could have arrested Paul then and there, and being lawfully in the basement could have seized the drugs because they were in plain view. [Citations.] Moore in fact could have made a citizen's arrest. [Citation.] We held in *United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983), that when one invites an undercover agent into his home, the agent can summon other agents to assist in the arrest, and the other agents are not guilty of a violation of the Fourth Amendment. We think the principle extends to the case where the initial, consensual entry is by a confidential informant. The interest that the *Payton* [(445 U.S. 573, 63 L. Ed 2d 639, 100 S. Ct. 1371)] decision protects is the interest in the privacy of the home, and has been fatally compromised when the owner admits a confidential informant and proudly displays contraband to him. It makes no difference that the owner does not know he is dealing with an informant. 'A government agent may obtain an invitation onto property by misrepresenting his identity, and if invited, does not need probable cause nor warrant to enter so long as he does not exceed the scope of his invitation.' *United States v. Scherer*, 673 F.2d 176, 182 (7th Cir. 1982)." 808 F.2d at 648.

▇▇ Likewise, in the case before us, Lothar was present in defendant's office with the defendant's consent as they were going to consummate a drug purchase. Defendant asked Lothar if he wanted to see the "goods" and displayed the cocaine to Lothar. At that moment the cocaine was in plain view, and Lothar could have effected a citizen's arrest of the defendant. (*Paul*, 808 F.2d at 648; Ill. Rev. Stat. 1989, ch. 38, par. 107—3.) Having viewed the offense taking place, Lothar left defendant's office to summon assistance to effect defendant's arrest. As the court in *Paul* explained:

"Hence Moore could have testified to what he saw in the basement. Having seen it he could as we said have arrested Paul on the spot. He could have grabbed some marijuana and run out and handed it to the agents. He could have been an undercover agent and summoned 100 other agents to enter forcibly the second after Paul showed him the marijuana. Had Moore done (or been) any of these things, Paul would have had no recourse under the Fourth Amendment. With all these risks assumed, the incremental risk that Moore would

be an informant rather than an agent but would invite agents in to protect him and arrest Paul is too slight to bring the requirement of obtaining a warrant into play." 808 F.2d at 648.

Thus, we conclude, as did the court in *Paul,* that the warrantless entry into defendant's office did not violate the defendant's rights under the fourth amendment. Thus the trial court was correct in denying defendant's motion to suppress.

The judgment of the circuit court is affirmed.

Affirmed.

NICKELS J., concurs.

JUSTICE INGLIS, specially concurring:

I concur in the judgment but write separately because I respectfully disagree with certain statements and conclusions in the majority opinion. It is my opinion that there was no probable cause to issue a search warrant in this case before the police officers actually became aware that cocaine was at defendant's office. However, I also believe that exigent circumstances existed such that the search and subsequent arrest were justified.

The majority correctly points out that warrantless searches, such as the one in the case at bar, are *per se* unreasonable unless exigent circumstances are present. (*Payton v. New York* (1980), 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380; *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 311-12, 56 L. Ed. 2d 305, 310-11, 98 S. Ct. 1816, 1819-20.) Our supreme court has recently provided a lengthy, but not exhaustive, list of factors to consider when determining whether exigent circumstances are present. In *People v. Foskey* (1990), 136 Ill. 2d 66, the court set out several factors to consider, including:

"(1) whether the offense under investigation was recently committed; (2) whether there was any deliberate or unjustifiable delay by the officers during which time a warrant could have been obtained; (3) whether a grave offense is involved, particularly one of violence; (4) whether the suspect was reasonably believed to be armed; (5) whether the police officers were acting upon a clear showing of probable cause; (6) whether there was a likelihood that the suspect would have escaped if not swiftly apprehended; (7) whether there was strong reason to believe that the suspect was on the premises; and (8) whether the police entry, though nonconsensual, was made peaceably." *Foskey,* 136 Ill. 2d at 75.

See also *People v. White* (1987), 117 Ill. 2d 194, 216-17, *cert. denied* (1988), 485 U.S. 1006, 99 L. Ed. 2d 698, 108 S. Ct. 1469.

An examination of this list of factors leads me to conclude that several are present in this case. It is apparent that the offense under investigation (cocaine possession and distribution) was recently committed; there was no deliberate or unjustifiable delay during which a warrant could have been obtained; and there was more than a "strong reason" to believe that the suspect was on the premises.

Unlike the majority, I find the decision in *People v. Eichelberger* (1982), 91 Ill. 2d 359, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383, supports a finding that exigent circumstances existed in this case. In *Eichelberger*, police officers, through an informer, set up a "controlled buy" of LSD from the defendant's hotel room. The officers heard the informer and the defendant talking about the drug sale and entered the hotel room, arrested the defendant and seized LSD from the defendant's pocket. The supreme court upheld the warrantless arrest and seizure, holding that "[t]he fact that the officers reasonably believed that a felony was being committed in their presence demanded prompt police action and constituted an exigent circumstance which justified the warrantless entry into the hotel room and the arrest." *Eichelberger*, 91 Ill. 2d at 369.

I would agree with the State that *Eichelberger* controls the disposition of this case and would therefore affirm on this basis.