NO. 5-94-0875

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the

                                    )  Circuit Court of 

     Plaintiff-Appellee,            )  Fayette County.

                                    )  

v.                                  )  No. 94-CF-52

                                    )

RICHARD KEITH FINLEY,               )  Honorable

                                    )  Patrick J. Hitpas, 

     Defendant-Appellant.           )  Judge, presiding.  

_________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a jury trial, defendant, Richard Keith Finley, was convicted of unlawful possession of less than 15 grams of cocaine; he was found not guilty of unlawful production of cannabis.  Defendant was sentenced to a term of five years' imprisonment in the Department of Corrections and ordered to pay a $500 drug assessment fine and a $50 lab fee.

Defendant raises two issues on appeal:  (1) whether the court erred in denying the motion to suppress evidence where the court's reliance on the "consent once removed" doctrine was misplaced and (2) whether defendant is entitled to credit towards the $500 drug offense assessment for all the days he spent in custody.  We reverse and remand.

I

On June 3, 1994, defendant was charged by indictment with the offense of unlawful possession with intent to deliver more than one gram but less than 15 grams of cocaine in violation of section 401(c)(2) of the Illinois Controlled Substances Act (the Act) (720 ILCS 570/401(c)(2) (West 1992)) and the offense of unlawful production of more than 50 cannabis sativa plants in violation of section 8(d) of the Illinois Cannabis Control Act (720 ILCS 550/8(d) (West 1992)).

On September 8, 1994, defendant filed a motion to suppress physical evidence and inculpatory and exculpatory statements.  The motions alleged, among other things, that the police illegally entered defendant's residence, seized evidence, and coerced defendant into making statements.

At the September 19, 1994, hearing on defendant's motions, Larry Reid, an agent with the Southwestern Illinois Drug Task Force (Drug Task Force), testified that on May 12, 1994, he was involved in an investi­ga­tion in which Randy Adams was arrested for the delivery of cocaine to an informant named Tim Johnson.  Adams offered to cooperate as a confidential informer for the Drug Task Force and agreed to get cocaine from someone else.  Adams advised the agents that he could obtain cocaine from Richard Finley, and he agreed to take the agents to the trailer where defendant was staying.  The other agents present were Inspectors Kelvin Worker, Sparling, Robert Hatcher, and John Loy.

Adams led the agents to defendant's trailer in Shobonier.  Reid instructed Adams to purchase an ounce of cocaine.  Adams entered the trailer but returned shortly to inform Reid that defendant did not have an ounce of cocaine.  Adams was told to return to the trailer and to get whatever amount of cocaine he could.  Adams would make the prearranged signal if he obtained the cocaine, so that the agents would be alerted.  Adams returned to the trailer and came back out, signaling that he had obtained the cocaine.  Adams gave the cocaine to Reid and reported that there were cannabis plants inside the trailer.

Reid signaled the other officers that there were drugs in the trailer.  The agents secured the area and entered the trailer.  Once inside the trailer, Reid saw cannabis plants, as well as white powder in the bathroom.

Randy Adams testified that Reid arrested him earlier in the evening of May 12, 1994, for selling cocaine to a police informant.  After his arrest, Adams agreed to assist the agents by purchasing drugs from others.  Adams told the officers that he could get some cocaine from defendant.  Adams then directed the officers to defendant's residence.  Upon arriving at defendant's trailer, Adams knocked on the door and defendant let him in.  Two other people were also present, Steve Cook and Heather McGeehon.  Adams asked defendant for an ounce of cocaine, but defendant said he did not have that much.  Adams left and told Reid, who was waiting in the vehicle, that he could not get an ounce of cocaine from defendant.  Reid instructed Adams to go back and get whatever Adams could obtain.  Adams reentered the trailer and obtained a gram of cocaine from defendant.  Adams left the trailer and removed his hat, signaling that he had obtained the cocaine.  Adams estimated that there were 10 agents around the trailer.  Adams subsequently made a deal with the State for a minimum sentence if he testified against defendant.

Kelvin Worker, an inspector with the Drug Task Force, testified that he was among the other agents of the task force outside defendant's trailer.  Worker believed there were a total of 14 officers at the scene.  Worker saw Adams leave the trailer and give the signal.  Reid activated the "panic button", signaling that there had been a drug sale in the trailer.  Worker arrived at the door to the residence first.  He testified that he just briefly knocked on the door and opened it in the same motion and went inside with his gun drawn.  As he moved through the trailer, Worker announced "police".  Worker encountered defendant in the bathroom and took him into custody.

Inside the trailer, Worker observed cannabis plants and grow lights as he moved down the hallway toward the back of the trailer and in the living room.  Defendant offered to cooperate, telling the agents that the trailer belonged to Eugene Wilkerson and that defendant was taking cuttings of the plants and starting new ones.  Defendant also offered to serve as an informant.

Defendant testified that he was temporarily staying at the Wilkerson trailer because of an argument with his wife.  Defendant was a journeyman carpenter and had been doing some repair work for Wilkerson.  On the night of the raid, defendant was very intoxicated.  He testified that he did not recall signing either the constitutional-rights-and-waiver form or the consent-to-search form.  Defendant also does not remember his 
Miranda
 (
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) rights being read to him.  Defendant further testified that he did not remember inviting Adams into the trailer.

Sheriff's Deputy Aaron Lay testified as to defendant's condition at the time of his arrest.  Lay stated that defendant was "very out of it," "lethargic," and "sort of non[]responsive."  Lay stated that defendant was unable to carry on a conversation beyond  "yes" and "no" answers.  Lay helped defendant to the squad car by holding his arm to balance him.  Lay agreed that defendant's body was "like a dish rag."

Leonard Rosenkoetter, a correctional officer, observed defendant upon his arrival at the Fayette County jail.  Rosenkoetter testified that defendant looked like he was under the influence of something or he was drunk and that defendant appeared to be very limp and would fall if he was not held up.

Defendant urged that the evidence and statements obtained be suppressed since the search was improper because defendant was intoxicated and unable to voluntarily and knowingly consent to the search.  The State principally argued that the search and arrest were proper because the entry and search occurred after the delivery of a controlled substance to a confidential informant.  The court took the matter under advisement.

On September 19, 1994, the court entered an order finding that the search had been without a warrant and that exigent circumstances did not exist to justify the warrantless search.  The court found that defendant, due to his condition and the circumstances of the arrest, was unable to give voluntary consent.  The court suppressed defendant's statements.  However, the court found that the case urged by the State regarding warrantless entry and search following a delivery to a confidential informant, 
People v. Galdine
, 212 Ill. App. 3d 472, 571 N.E.2d 182 (1991), applied, and therefore, the court denied defendant's motion to suppress the evidence of the items seized that had been in plain view.

A jury trial was held from September 19 to September 21, 1994.  The jury returned verdicts finding defendant guilty of unlawful possession of less than 15 grams of cocaine and not guilty of unlawful production of more than 50 cannabis plants.  The sentencing hearing was held on November 30, 1994.  The court found appropriate an extended-term sentence for a class 4 conviction, noting defendant's long history of drug usage and prior convictions.  The court imposed a five-year sentence of imprisonment and a fine of $500 for a drug assessment and a $50 lab fee.  Defendant appeals.

II

Defendant contends that the trial court erred in relying on 
Galdine
 to deny the suppression of the evidence seized, because the authority upon which the decision in 
Galdine
 relied has been limited by subsequent authority, namely, 
United States v. Diaz
, 814 F.2d 454 (7th Cir. 1987), in which the doctrine of "consent once removed" was limited.  Defendant further maintains that the doctrine of "consent once removed" is inapplicable to the type of entry which occurred here where the confidential informant's consent to enter terminated when he accomplished his purpose and left defendant's residence with no ostensible consent to reenter.  We agree for the reasons set out below.

A reviewing court will not disturb the trial court's denial of a motion to suppress unless it is clearly erroneous.  
Galdine
, 212 Ill. App. 3d at 478, 571 N.E.2d at 187.  On a motion to suppress evidence the burden of proof is on the defendant to show that the police illegally obtained the evidence.  212 Ill. App. 3d at 479, 571 N.E.2d at 187.  Upon defendant sustaining his burden, the State must establish that the search and seizure were reason­able.  212 Ill. App. 3d at 479, 571 N.E.2d at 187.

"[T]he Fourth Amendment `prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest'" (
Diaz
, 814 F.2d at 457, quoting 
Payton v. New York
, 445 U.S. 573, 576, 63 L. Ed. 2d 639, 100 S. Ct. 1371, 1374 (1980)), "even with probable cause, unless the entry was consented to, or unless there were `exigent circumstances'" (
Diaz
, 814 F.2d at 458, quoting 
Payton
, 445 U.S. at 590, 63 L. Ed. 2d 639, 100 S. Ct. at 1382).  
Here, the State maintains that the agents' warrantless search of defendant's trailer was justified under the "consent once removed" doctrine which was announced in 
United States v. Paul
, 808 F.2d 645 (7th Cir. 1986), and adopted by the court in 
Galdine
.

In 
Paul
, a confidential informant for the Federal drug authorities arranged to purchase a certain amount of marijuana from the defendant.  Once the time and place of the transaction were set, the informant was equipped with an electronic transmitting device.  The informant was admitted into defendant's house for the purpose of buying the marijuana.  Upon seeing the marijuana, the informant activated the transmitting device.  Federal agents entered defendant's house and placed him under arrest.  In finding lawful the warrantless search of defendant's home, the 
Paul
 court extended its previous holding in 
United States v. Janik
, 723 F.2d 537, 548 (7th Cir. 1983), stating:

"We held in [
Janik
] that when one invites an undercover agent into his house, the agent can summon other agents to assist in the arrest, and the other agents are not guilty of a violation of the Fourth Amendment.  We think the principle extends to the case where the initial, consensual entry is by a confidential informant."  
Paul
, 808 F.2d at 648.

The Seventh Circuit Court of Appeals next addressed the issue of the reason­ableness, under the fourth amendment, of the warrantless entry of law enforcement officers based upon the consent granted to an undercover agent or confidential informant in 
United States v. Diaz
, 814 F.2d 454 (7th Cir. 1987).  In 
Diaz
, an undercover agent arranged to buy eight kilograms of cocaine from Diaz at $43,000 per kilogram, for a total of $344,000.  Diaz and the agent met at Diaz's hotel room.  The agent was accompanied by agents from the Federal Drug Enforcement Agency (DEA) as well as officers from several local police departments.  For surveillance purposes, the law enforcement agents occupied the hotel room directly across from Diaz's room.  Diaz admitted the undercover agent into his room and showed him the cocaine.  The agent tested the white powder, confirming that it was cocaine.  The undercover agent then informed Diaz that he would go to the lobby to call his "money man," who would be there in about 30 minutes.  Diaz told the agent he would wait in his room until the money arrived.  At that point, the agent left the room and then signaled the agents waiting in the hotel room.  The undercover agent then knocked on Diaz's door again, saying, "I forgot my keys and coat."  The surveillance team then entered into Diaz's room, arrested him, and seized the box contain­ing the packages of white powder and a flight bag containing money.  The 
Diaz
 court held that Diaz effectively consented to the second entry of the law enforcement officers by virtue of his consent to the undercover agent's first entry and that this consent was not vitiated by the agent's brief exit to obtain help from the other officers in making the arrest.  The court in 
Diaz
 explained its application of the "consent once removed" doctrine, stating:

"We emphasize that we have applied this doctrine of `consent once removed' only where the agent (or informant) entered at the express invitation of someone with authority to consent, at that point established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers.  We do not intend to suggest by our analysis that one consensual entry means that law enforcement agents may thereafter enter and exit a home at will.  In this case, however, the second entry was clearly lawful.  Therefore, Diaz's arrest was valid, and there was no illegal search."  814 F.2d at 459.

In two subsequent cases, 
United States v. Jachimko
, 19 F.3d 296 (7th Cir. 1994), and 
United States v. Akinsanya
, 53 F.3d 852 (7th Cir. 1995), the court applied the three-part test enumerated in 
Diaz
.  In 
Jachimko
, an informant approached the DEA with information about individuals engaged in indoor marijuana cultivation.  Jachimko's involvement in the operation was unknown when the informant contacted the DEA. 

The informant arranged for a meeting between Robert Anhalt, identified as a participant in the marijuana operation, and a DEA undercover agent.  The meeting occurred at Anhalt's house.  After several meetings, an agreement was reached for the purchase of marijuana plants.  The informant arranged to see the plants.  The informant wore a recording device and was supplied an agent-alert button.  The agents instructed the informant to activate the alert button only if he saw more than one hundred marijuana plants.  The informant met Anhalt at Anhalt's house.  The two drove to and entered Jachimko's house.  The DEA did not have any suspicion that Jachimko was involved in any drug activity and had no knowledge that marijuana was inside the house.  Twenty minutes after entering Jachimko's house, the informant activated the button.  The agents entered, searched the premises, seized the marijuana plants, and arrested Jachimko and Anhalt.  The district court had held that the so-called "consent once removed" doctrine did not validate the warrantless entry into Jachimko's home because Jachimko was not under investigation, thereby improperly expanding the role of the informant in determining the existence of probable cause.  
United States v. Anhalt
, 814 F. Supp. 750, 752 (N.D. Ill. 1993).  The court of appeals rejected this reasoning, stating, "The district court's requirement that there be a pre[]existing investigation with respect to Jachimko is unwarranted because prior investigation or probable cause has never been a requirement for a consensual search."  
Jachimko
, 19 F.3d at 299.  The court of appeals remanded the case to the district court for an analysis pursuant to 
Diaz
.  

On remand, the district court in 
United States v. Jachimko
, 905 F. Supp. 540 (N.D. Ill. 1995) (
Jachimko II
), found that the government failed to meet its burden to prove by a preponderance of the evidence that the confidential informant had established probable cause inside Jachimko's house prior to activating the alarm.  The confidential informant was wired prior to meeting Anhalt and entering Jachimko's house.  A DEA agent monitored the conversa­tions.  However, at the suppression hearing, DEA Agent Courtney testified that the tapes of the conversations inside Jachimko's house were blank and that the agent responsible for monitoring the informant's conversations did not prepare a report of the conversa­tions and no record of them existed.  The court concluded that, for purposes of corroborating the informant's testimony, Agent Courtney's testimony was "irretrievably defective because it was based on hearsay."  
Jachimko II
, 905 F. Supp. at 547.  The court further found that, among other things, the confidential informant's testimony regarding the events occurring after the agents entered Jachimko's home had numerous inconsistencies and gaps, that the informant lied to the court about his active cocaine use, and that the informant had an arrest warrant pending at the time he contacted the DEA.  Based on the facts before it, the court in 
Jachimko II
 concluded that "[t]he government did not sufficiently show, with reliable evidence, that [the confidential informant] had probable cause to believe that contraband was located in Jachimko's basement apartment prior to pressing the alert button."  905 F. Supp. at 547.

The most recent Seventh Circuit case applying the "consent once removed" doctrine is 
United States v. Akinsanya
, 53 F.3d 852 (7th Cir. 1995).  In 
Akinsanya
, an admitted drug dealer was cooperating with the DEA in the investigation of drug trafficking in the Chicago area.  To fulfill his obligations to the government, the informant reestablished contact with a drug dealer and former business associate, Akinsanya, who was known to sell heroin.  After several conversations with the informant, Akinsanya agreed to sell the informant a certain amount of heroin.  The informant notified Akinsanya that he needed a sample of the heroin to show his buyer.  The parties met and Akinsanya gave the informant a small sample of heroin, which the informant "lost" before he could turn it over to the authorities.  After another series of telephone calls between Akinsanya and the informant, they agreed to meet at Akinsanya's apartment to complete the transaction.  Akinsanya wanted to see the money.  The informant left the building and called a DEA agent to tell him that Akinsanya wanted to see the money.  The agent told the informant that the informant would have to see the heroin before revealing any money to Akinsanya.  Akinsanya and the informant went to Akinsanya's car and retrieved the drugs and went to Akinsanya's apartment.  DEA agents followed the two to the apartment and took up positions in the hallway.  The informant called an agent posing as the buyer and informed him that he had seen the heroin.  The agent instructed the informant to wait briefly and then leave the apartment.  As the informant stepped from the apartment, one of the agents waiting outside in the hallway stepped into the apartment and identified himself.  The other agents entered, restrained Akinsanya, searched the apartment, and found a plastic bag contain­ing approximately 100 grams of heroin.  The 
Akinsanya
 court found that the three requirements of the "consent once removed" doctrine were established.  The court stated that the consent given earlier to the informant "was not withdrawn simply because [he] stepped out of the apartment moments before, or at the same time, the agents entered."  
Akinsanya
, 53 F.3d at 856.

The "consent once removed" doctrine has been applied in only one Illinois case, 
People v. Galdine
, 212 Ill. App. 3d 472, 571 N.E.2d 182 (1991).  In 
Galdine
, the informant was working for the Lake County Metropolitan Enforcement Group (LMEG) making pur­chases of cocaine from Galdine.  The informant and a LMEG agent attempt­ed to arrange a sale of cocaine with Galdine at which he could be arrested.  The first scheduled meeting did not take place because the defendant was unable to obtain the cocaine.  Several days later the informant contacted the LMEG agent, informing the agent that Galdine had the cocaine and notifying him of the time the buy was to take place.  The various law enforcement personnel were contacted and met at the Antioch police department regarding the case.  The informant wore a wire.  After the meeting, the officers set up surveillance outside Galdine's office.  The informant and Galdine met in Galdine's office.  The informant told Galdine that his buyer had the money.  Galdine showed the informant the cocaine.  The informant told Galdine that he had to call his "buyer", at which point the informant called an agent, telling the agent that he had seen the cocaine.  The informant attempted to get Galdine to leave the building to deliver the cocaine, but Galdine refused.  The informant left the building, stating that Galdine would not come out and that the officers would have to go into the office.  The officers were given the signal and entered Galdine's office.  The informant told the agent where the cocaine was located in Galdine's desk.  The agent recovered the cocaine and Galdine was arrested.  

The 
Galdine
 court found that exigent circumstances did not exist to justify the warrantless search of the defendant's office.  However, the court sustained the warrantless entry based on the "consent once removed" doctrine.  The court, relying upon 
Paul
, found that Galdine invited the informant into his office and displayed the cocaine to him.  "At that moment the cocaine was in plain view, and [the informant] could have effected a citizen's arrest of the defendant.  [Citations.]  Having viewed the offense taking place, [the informant] left defendant's office to summon assistance to effect defendant's arrest."  
Galdine
, 212 Ill. App. 3d at 484, 571 N.E.2d at 190.

Upon careful consideration of the case law involving the "consent once removed" doctrine, we conclude that it is inapplicable to the facts of this case.  
Paul
, 
Diaz
, 
Jachimko
, 
Akinsanya
, and 
Galdine
 all present a vastly different set of circumstances from the situation leading up to the warrantless entry involved here.  In each of those cases, in preparation for the actual sale, the informant had a number of conversations with the defendant about obtaining drugs, and these conversations were monitored by law enforcement authori­ties.  The informant and the defendant planned the time and place of the transaction.  They agreed upon a predetermined amount and price for the drugs to be sold.  In most of the cases, the authorities were involved in an ongoing surveillance of the defendant.  In 
Galdine
 and 
Akinsanya
, the informants had made previous drug buys from the defendant.  Significantly, in each instance the informant was expressly invited into the defendants' house, hotel room, or office specifically to view the drugs and to consummate the drug sale.  Importantly, the defendant understood that the informant would leave to obtain the money from his "buyer" and would return to the defendant's premises.  Finally, the informants were in communica­tion with law enforcement authorities either by telephone, electronic eavesdropping devices, or electronic transmitting devices during the time they were alone with the defendants and were able to alert the authorities immediately upon establishing probable cause.

In the present case, the officers recruited Adams as an informant immediately following his arrest.  Prior to Adams' arrest he had not worked in connection with the police.  Consequently, the police had no knowledge of his reliability as an informant.  The details of the drug purchase at issue here, such as the amount or the price, were not predetermined.  Initially, Adams was told to secure an ounce of cocaine.  Unable to obtain an ounce of cocaine, Adams was instructed to get whatever he could from defendant.  No price was ever determined or even discussed.  The record does not reveal that any money was ever exchanged between Adams and defendant.  Adams was never specifically invited into defendant's trailer for the purpose of making a drug sale.  Furthermore, the record reveals that defendant was highly intoxicated at the time of Adams' entry into the trailer, thereby undermining any alleged consent extended to Adams.  In light of the evidence presented, there is no basis upon which to justify the application of the "consent once removed" doctrine.

Further, subse­quent Seventh Circuit cases have limited the "consent once removed" doctrine initially announced in 
Paul
.  In 
Paul
, the court explained the "consent once removed" doctrine, stating:

"[W]hen one invites an undercover agent into his house, the agent can summon other agents to assist in the arrest, and the other agents are not guilty of a violation of the Fourth Amendment."  
Paul
, 808 F.2d at 648.

The court in 
Paul
 extended this principle "to the case where the initial, consensual entry is by a confidential informant."  808 F.2d at 648.  In 
Diaz
, the court limited the broad principle set forth in 
Paul
, stating that the doctrine of "consent once removed" is applicable only where the undercover agent or informant:  (1) entered at the express invitation of someone with authority to consent, (2) at that point established the existence of probable cause to effectuate an arrest or search, and (3) immediately summoned help from other officers.  
Diaz
, 814 F.2d at 459.  In setting forth these requirements, the 
Diaz
 court stated, "[We] do not intend to suggest by our analysis that one consensual entry means that law enforcement agents may thereafter enter and exit a home at will."  814 F.2d at 459.

Assuming, 
arguendo
, that the "consent once removed" doctrine is applicable to the case at bar, we would conclude, nonetheless, that the State failed to meet the criteria of the doctrine.  At best, the record suggests that defendant did not expressly invite Adams to his trailer for the purpose of conducting a drug transaction. Defendant had no previous arrangements with Adams regarding any drug buys.  Defendant was highly intoxicated at the time, vitiating any alleged consent given to Adams.  Secondly, Adams, in his initial entry, did not establish probable cause to believe that cocaine was located inside the trailer.  Defendant did not display any cocaine to Adams, nor did defendant arrange to make a future sale to Adams.  Having failed to meet two out of the three elements, a warrantless search of defendant's trailer could not be sustained under this doctrine.  Accordingly, the trial court improperly denied defendant's motion to suppress the evidence seized in an illegal warrantless search of his home.  Therefore, this court reverses and remands for a new trial.

Lastly, defendant contends that he is entitled to credit towards the $500 drug offense assessment for the days he spent in custody.  We discuss this issue in the event it arises on remand.

Section 110-14 of the Code of Criminal Procedure of 1963 provides:

"§110-14.  Credit for Incarceration on Bailable Offense.  Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant.  However, in no case shall the amount so allowed or credited exceed the amount of the fine."  725 ILCS 5/110-14 (West 1992).

This credit is applicable to a statutory drug offense assessment.  
People v. Reed
, 255 Ill. App. 3d 949, 651, 627 N.E.2d 729, 731 (1994).  Defendant was taken into custody on May 12, 1994.  Six days later he began serving a sentence on a prior misdemeanor conviction.  Defendant was not released on bond on the charge underlying this conviction.  Consequently, defendant should have been entitled to in-custody credit because he was simultaneously in custody on two charges.  
People v. Robinson
, 273 Ill. App. 3d 1069, 1076, 652 N.E.2d 1311, 1316 (1995), 
aff'd
, 172 Ill. 2d 452, 667 N.E.2d 1305 (1996).  Accordingly, the sentencing order should have reflected 172 days of sentencing credit and a credit of $5 a day for each day incarcerated toward the statutory drug offense assessment.

For the foregoing reasons, the judgment of the circuit court of Fayette County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

CHAPMAN and HOPKINS, JJ., concur.